FLEA MACHINERY COMPANY and the State
Insurance Fund, Petitioners,

v.

Mary Katherine EMMONS and the State
Industrial Court, Respondents.

No. 40932.

Supreme Court of Oklahoma.

Oct. 6, 1964.

Mont R. Powell, Guy A. Secor, Oklahoma City, for petitioners.

Jack B. English, Tulsa, Charles R. Nesbitt, Atty. Gen., Oklahoma City, for respondents.

DAVISON, Justice.

The evidence is undisputed that on May 4, 1963, Cecil Franklin Emmons, an employee of petitioner, Lea Machinery Company, suffered a coronary occlusion resulting in a myocardial infarction terminating in death on the same day.

On May 31, 1963, Mary Katherine Emmons, claimant, as surviving widow, filed a claim under the death benefit provisions of the Workmen's Compensation Act with the State Industrial Court. Petitioner and its insurance carrier, State Insurance Fund, in their answer alleged that "his death was caused by coronary thrombosis and that his heart disease and attack was not the result of an accidental injury received while employed by the respondent."

The trial judge entered an order awarding death benefits to claimant. The order was affirmed on appeal by the court en banc. Petitioners bring this original proceeding to review said order.

The sole question to be determined is whether there is any competent evidence to sustain the order of the State Industrial Court finding that deceased employee on May 4, 1963, "sustained an accidental injury arising out of and in the course of his employment, consisting of a heart attack, from which he died on said date."

The widow's claim was predicated upon an accidental injury to the heart from work-connected exertion and strain allegedly suffered by claimant when he and a co-employee installed tracks on a D-8 Caterpillar tractor in the afternoon of the day preceding employee's death.

■ The pattern of proof necessary to establish an accidental injury from work-connected strain or exertion consists of two essential elements: (1) lay testimony as to the nature of labor performed by the workman when injury occurred; and (2) expert opinion that the exertion attendant upon such activity as shown by the evidence was sufficient in degree to, and did produce, the strain to which disability or death is sought to be ascribed. Only when both of these evidentiary components are supplied may the fact of an accidental injury from strain be established. Berryhill v. Prudential Premium Co., Okl., 394 P.2d 520; Black, Sivalls & Bryson, Inc. v. Coley, Okl., 367 P.2d 1017.

■ Michael Lynn McKenzie testified for claimant. His testimony was that on May 4, 1963, he was employed by Lea Machinery Company as a mechanic's helper; that on said date he saw deceased greasing Caterpillars and scrapers; that in doing this duty it was necessary for deceased to climb upon some of the Caterpillars and to stoop on others; that he later saw deceased talking to Mr. Lea and another employee and that at that time deceased fell to "one knee like he was going to vomit. Then he fell over against the pickup and hit his head and just fell down;" that deceased was then taken to a hospital where he was dead on arrival. He further stated that deceased was a Caterpillar mechanic, a master mechanic; that deceased "operated and tore down all this equipment like a regular automobile mechanic would tear down your car. The only difference in them is that heavy equipment is a lot heavier. It is considered extremely hard work;" that on May 3, 1963, the day preceding the death of employee, witness and deceased installed tracks on a D-8 Caterpillar; that to put on the tracks "the tractor was jacked up completely off the ground. We drag in the other track. They are lifted by man power upon the sprocket and the sprocket turns it over and then you carry it over the rollers to the front aisle. And this track, I don't know how much it weighed but I know it is more than I want to lift;" that it took all afternoon to change the tracks. Witness testified further:

"Q. Mr. McKenzie, was this track changing activity a very exerting type of work?

"A. Yes, sir.

"Q. And required expenditure of physical energy to a great extent?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. Was the work performed in the track changing activity heavier than normal?

"A. Yes, sir."

Claimant testified that deceased left home for work each day around 5:00 to 5:30 A.M.; that he usually returned from work around 6:30 or 7:00 P.M.; that on May 3, 1963, deceased returned from work about 6:30 P.M.; that "he seemed to be utterly exhausted," he was "dredged with perspiration and he was very pale;" that deceased "washed up" and fell on the bed; that shortly thereafter when he came down the steps to dinner "he was unsteady like he was dizzy on his feet and he held on to the rail all the way down the stairs, which was unusual;" that after deceased finished his dinner he sat down on the floor in the bedroom; that deceased got up from the floor and went into the dining room "and he walked in there and grabbed himself and said 'oh, I think my heart has got me;'" that deceased then fell down on the end of a couch; that about 8:30 or 9:00 P.M. deceased went to bed; that the next morning deceased "was pale and feeling weak" but that he went on to work at 5:30 A.M.; that the next information she received was that her husband was dead.

Dr. C. testified by written report for claimant. He stated that on November 30, 1962, he had examined deceased for the purpose of deceased obtaining a life insurance policy; that at that time the examination revealed no abnormalities of the heart.

Dr. O testified for claimant by way of deposition. As a basis for a hypothetical situation Dr. O was asked by claimant to assume, among other things such as age, weight, etc., that deceased was a physically active man with no known heart difficulty, that he had been previously examined by Dr. C as a condition to receiving a life insurance policy and found to have no heart "murmur or arrhythmia," that on a particular day deceased had assisted in the changing of tracks for a Caterpillar tractor, which type of work was heavier than his usual work and that such work lasted all afternoon, that on arriving home shortly thereafter "he was observed to be noticeably more exhausted. He was very, very tired. He was pale. He experienced noticeable shortness of breath. He was seen to be unsteady on his feet. He complained to his wife of chest pain and held his hand to his chest in the area of his heart." "He ate his evening meal, walked up a flight of stairs, was again experiencing, or seemed to experience shortness of breath. He was again unsteady, pale and grasping at the banister." "On Saturday morning, May 4th, he reported to work, was observed to grease some heavy equipment," that that afternoon he was "seen to strain or give the impression of straining. He gave the impression of being in pain" and shortly thereafter died. Dr. O was then asked his opinion as to the cause of death assuming the hypothetical situation to be true. Dr. O stated that in his opinion "he died of a heart attack or more precisely a myocardial infarction, probably precipitated by a coronary thrombosis. On reviewing these facts, it appeared to me that the first sign of this fatal illness appeared earlier in the evening of May 3rd when he complained of chest pain, shortness of breath and lightheadedness. In view of the fact that he underwent some undue exertion within a relatively short period prior to this, I think there is a strong likelihood that this unusual exertion might have precipitated this illness which began about Six or Seven P.M. on May 3rd."

"Q. All right let me rephrase the question. In your opinion, Doctor, can you tell us whether or not the symptoms related here and the exertion outlined, in the realm of medical probabilities did cause the attack and his death?

"Mr. Secor: Again, I object as being suggestive.

"A. Shall I go ahead and answer?

"Q. Yes, you may answer.

"A. The exertion—what is the exertion to which you are referring?

"Q. That experienced on May 3rd of changing the tracks on the Caterpillar.

"A. Well, I think that it is reasonable to accept this as a precipitating cause of his illness, and that there is a strong probability that either he would not have had a heart attack or if he had that it would be milder, if he had not exerted himself in this manner."

We feel from the evidence that the two elements of proof above referred to have been supplied and the factum of an accidental injury from strain has been established.

■ Whether a heart attack suffered by a workman resulted from strain and exertion arising out of and in the course of his employment or from other causes which are unrelated thereto and disconnected therefrom, presents a question of fact for the determination of the State Industrial Court, whose findings on such issue will not be disturbed on review, when based on competent evidence reasonably tending to support it. Hefner Co. v. Lantz, Okl., 393 P.2d 845; Farmers Cooperative Ass'n v. Madden, Okl., 356 P.2d 741.

■ Petitioners argue that there is no evidence in the record that deceased suffered "a shortness of breath." With that we agree.

Petitioners further urge then that because of lack of evidence of a "shortness of breath" as propounded in the hypothetical question to Dr. O his testimony is incompetent. With that we do not agree.

The record when viewed in its entirety reveals that Dr. O was familiar with, and assumed substantially all, the salient facts adduced by the proof. On cross-examination counsel for petitioners inquired of Dr. O regarding additional aspects and circumstances of the case which were deemed favorable to the petitioners. Dr. O's testimony clearly shows that it was his opinion that the extra exertion of putting the tracks on the Caterpillar tractor precipitated deceased's heart attack.

There is competent evidence reasonably tending to support the award of the State Industrial Court.

Award sustained.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.