Yatonnah GRIFFIN, Petitioner,

v.

FLINT STEEL CORPORATION and the
State Industrial Court, Respondents.

No. 41116.

Supreme Court of Oklahoma.

July 27, 1965.

**64**

Dennis J. Downing, Tulsa, for petitioner.

Houston, Klein & Davidson, Tulsa, Charles R. Nesbitt, Atty. Gen., for respondents.

WILLIAMS, Justice.

This is an original proceeding by Yatonnah Griffin, claimant, to review an order of the State Industrial Court denying his claim for compensation against Flint Steel Corporation, respondent. An award was first entered by the trial judge but was vacated and the claim denied by the court en banc on appeal.

The record reflects that claimant was a welder and had been so employed by respondent some nine years prior to the date of his alleged injury on February 27, 1963. At that time he was fifty-one years of age.

Claimant testified that on said date he reported for his regular work on the evening shift which was from 4:30 o'clock P.M. to 1:00 o'clock A.M; that approximately 6:30 P.M. he was fitting together two steel "rings" which were six feet long and six feet in diameter, the finished product to be a tank; that in making this "fitting" it was necessary to "butt" the ends of the rings together and weld "lugs" on the low side of the rings in order to drive pins in the lugs to "even up" the rings; that these pins were of steel, twelve inches long and three inches in circumference; that usually his helper, Carroll Gene Watts, drove the pins and then he, claimant, would weld the rings together; that at this particular time, the helper had been called by the foreman to do a chore elsewhere and it was necessary for claimant to drive the pins. Claimant testified that he drove them with an eight pound sledge hammer, that it was strenuous work and that in doing this he exerted himself; that immediately he experienced pain in his chest; that he stopped the work for a while and the pain "slacked off" but when he attempted to work again, the pain returned; that he finally quit work and told his foreman about this "hurting" and he was taken to the first aid station from which a nurse took him to a hospital. The nurse called claimant's own physician after he told her who his family doctor was and the doctor met him at the hospital where he was confined for five weeks.

Claimant testified further that when he came to work that day and got out of his car "his heart had a funny feeling", that his shoulder "felt like it was tired" and that prior to reporting to work, he had hung two or three baskets of clothes on the line to dry.

On cross-examination, claimant admitted that driving of the pins was a usual and normal activity for a welder in fitting the steel rings and that there was nothing unusual or different in his using the sledge hammer on the day in question than when he had driven pins on numerous other occasions.

Carroll Gene Watts testified in behalf of respondent. He stated that he was a welder's helper for respondent; that on February 27, 1963, he was working with claimant; that he first saw claimant at about 4:15 P.M. at the foreman's desk where they got their job charts; that at that time claimant told him he didn't feel well and wished he had stayed at home; that it was a usual thing for the claimant to drive pins in pulling the rings together and that a person did not have to exert himself to drive the pins but that the pins did have to be hit "pretty hard."

William Cunningham testified for respondent, saying that he was the foreman on duty the night claimant became ill; that he first noticed claimant was having trouble when he came to the foreman's desk; that claimant told him that he "had felt bad" before he came to work on the above stated date and that he should have gone home but that he thought "he'd make it", but that claimant became worse, and he and a fellow employee took claimant to the first aid

station from which the nurse took claimant to the hospital.

Adelaide Burgess testified for respondent that she was a registered nurse and was so employed by respondent; that she was at her home when she received a call from the plant on February 27, 1963, that claimant was ill; that she immediately went there where she took claimant's blood pressure and pulse and then took him to the emergency room of a hospital after calling claimant's personal physician, Dr. L, to meet them there; that claimant told her "he had been feeling badly when he got out of his car and walked across the parking lot, before he came to work" and that at the time he had a "feeling of discomfort in his chest."

Dr. L testified for claimant by deposition. He stated he was the family physician of claimant and that on February 27, 1963, he was called to the emergency room of a hospital where he found claimant in physical distress and pain; that claimant told him that he had exerted himself in using the sledge hammer; that in his opinion, claimant had suffered a myocardial infarction on that date and that the activity of using the sledge hammer "influenced" and brought about the infarction.

Dr. F testified for respondent by deposition. His testimony was that he was called in for consultation by claimant's Dr. L; that he examined claimant, studied the electrocardiogram, the results of blood tests given the claimant, together with the history of the claimant provided by Dr. L, and that it was his opinion that what claimant was doing at the time of the heart attack had nothing to do with the attack, "It certainly didn't cause it."

Dr. A also testified for respondent by deposition that he obtained a medical history from claimant and examined him on June 17, 1963; that in his opinion claimant had suffered "a coronary heart occlusion on the 27th of February, 1963, which occlusion resulted in myocardial infarction" but that the heart attack "had no connection whatsoever with the fact he was working at the time of the attack."

The trial judge entered an order finding that claimant had sustained an accidental injury arising out of and in the course of his employment on February 27, 1963, consisting of an injury to his heart and awarded him medical and compensation benefits. The court en banc on appeal found "that said order should be vacated, and the claim denied as claimant did not have an accidental personal injury" and ordered the same "vacated, set aside and held for naught, and claimant's claim is denied as claimant did not have an accidental personal injury as alleged."

For vacation of the Industrial Court's order petitioner presents two propositions, as follows:

1. The order of the court en banc denying an award herein is too indefinite and uncertain for judicial interpretation.

2. There is no competent evidence before the Court but that of the petitioner showing that he sustained an accident in the course of his employment.

Claimant contends in his brief that "it must be noted that the respondent raised three issues by his answer herein" and that the lower court failed to make findings of fact responsive to the issues. Claimant cites and discusses the cases of McCarthy v. Forbes Painting & Decorating Co., 200 Okl. 555, 198 P.2d 212; Corzine v. Traders Compress, 196 Okl. 259, 164 P.2d 625; Wiles v. City of Stroud, Okl., 395 P.2d 404; Reed v. City of Tulsa, Okl., 397 P.2d 140; and Fischbach & Moore, Inc., of Texas, v. State Industrial Commission, 201 Okl. 170, 203 P.2d 422, as authorities for the rule that the Industrial Court must make specific findings of the ultimate facts responsive to the issues as well as the conclusions of law upon which an order is made granting or denying compensation, and where the findings of fact and conclusions of law are too indefinite and uncertain for judicial interpretation, such an

order will be vacated for further proceedings.

Let us first examine the answer of the respondent. It is set forth as follows:

"It is admitted that the claimant was in the employ of the respondent during the month of February, 1963, *but it is denied* that during the month of February, 1963 *the claimant sustained any kind or type of accidental personal injury* while acting in the course and scope of any employment with respondent.

"*It is* specifically *denied that the claimed heart attack* sustained by the claimant *resulted from any accident or personal injury or work performed* within the course and scope of any employment with this respondent.

"Further answering and for defense, respondent alleges that *if claimant has any disability,* it is solely by reason of a pre-existing condition, *neither caused nor aggravated by any accidental personal injury* sustained within the course and scope of his employment with respondent." (Emphasis ours).

We feel that all three sections of the answer pertain to the same question and raise but one issue: whether claimant sustained an accidental injury alleged.

It is necessary that the lower court find that an accidental injury has been sustained by a claimant arising out of and in the course of his employment before the court has jurisdiction to entertain proceedings on a compensation claim.

The primary issue was whether claimant sustained an accidental injury arising out of and in the course of his employment. If the court had found that claimant had sustained an accidental injury as alleged, then it would have been its duty to make further findings as to any benefits to which, under the evidence, claimant might have been entitled. However, since the court made the finding that it did, to-wit: that the claimant did not have an accidental injury as alleged, it was unnecessary that it go further and make additional findings. The finding made was sufficient to dispose of the main issue presented.

After examining the cases cited by claimant, we think they are distinguishable from the case at bar. In the Wiles case, supra, the finding and order of the Industrial Court had been only that the order of the trial judge "be and the same is hereby vacated, set aside and held for naught; and claimant's claim is denied." Therein we held such finding was not responsive to the issues and that it was too indefinite and uncertain for judicial interpretation because the trial tribunal did not make any finding as to whether deceased did or did not sustain an accidental injury.

In the Reed case, supra, the finding was "[t]hat claimant did not suffer a heart attack, arising out of and in the course of his employment * * * that resulted in any disability * * *." We held that we could not interpret that finding because we didn't know whether the lower court intended to find that claimant did not have a heart attack as alleged, or that he had a heart attack but suffered no disability from it.

In the Corzine case, supra, the lower court found "[t]hat the evidence is insufficient to show claimant sustained an accidental personal injury arising out of and in the course of his employment * * *." We held that, under the finding, we were unable to determine whether the court intended to find that the accident did not occur, or whether it intended to find that the claimant did not receive a compensable injury by reason of the accident, or whether it intended to find that the accident did occur and resulted in disability but that the same did not arise out of and in the course of his employment.

In the Fischbach case, supra, the part of the Industrial Court's order which was vacated by this court as being too indefinite and uncertain for interpretation was the language pertaining to the degree of permanent disability and not as to whether

claimant had sustained an accidental injury as alleged.

In the McCarthy case, supra, as in the Corzine case, supra, the order of the court below was "there is not sufficient evidence to establish an accidental personal injury arising out of and in the course of claimant's employment * * *." In vacating the order we cited the exact language used in the Corzine case as to why the order was too indefinite and uncertain for judicial interpretation.

In the case at bar claimant alleged that on February 27, 1963, he sustained an accidental personal injury arising out of and in the course of his employment. The Industrial Court made a definite finding that "claimant did not have an accidental personal injury as alleged." 85 O.S.1961, § 3, sub-section (7) provides: " 'Injury or personal injury' means only accidental injuries arising out of and in the course of employment * * *."

We feel in the present proceeding that the finding is clearly responsive to the decisive issue presented and is not too indefinite and uncertain for judicial interpretation and is sufficient for this court to properly review the matter.

Claimant urges that he has been at a "tremendous disadvantage" in attempting to brief his case because of the uncertainty of the meaning of the order. However, in his brief he sets forth and discusses the respondent's answer herein. On the day of hearing his claim, the following transpired:

"THE COURT: You deny the injury?

"MR. BORDERS: [attorney for respondent]: Yes.

"THE COURT: Anything else? Any other defenses?

"MR. BORDERS: Our defense, essentially, Your Honor, is that his disability is not a result of any injury on the job, and that—nor any aggravation of any pre-existing condition."

Under the circumstances it can hardly be said that the claimant can reasonably fail to comprehend that the reason for denying his claim was because he did not have an accidental personal injury arising out of and in the course of his employment as alleged.

We agree with claimant that the facts are undisputed that he was swinging an eight pound sledge hammer when he became ill and had to be taken to the hospital but we do not agree there was no competent evidence other than his own to show that he did not sustain an accidental injury.

Whether a heart attack suffered by a workman resulted from strain or exertion arising out of and in the course of his employment, or from other causes which are unrelated thereto and disconnected therefrom, presents a question of fact for the determination of the State Industrial Court whose findings on such issue will not be disturbed on review when based on competent evidence reasonably tending to support it. C. T. Hughes Construction Co. v. Phillips, Okl., 401 P.2d 498; Lea Machinery Co. v. Emmons, Okl., 395 P.2d 857; Hefner Co. v. Lantz, Okl., 393 P.2d 845.

We have also ruled, too many times to require citation, that where a disability for which compensation is sought is of such character as to require a determination of its nature, cause and extent, by skilled and professional persons, proof thereof must be made by the evidence of such persons.

Dr. F and Dr. A, respondent's medical experts, both testified that claimant's disability was not caused by nor related to the work he was doing on February 27, 1963. We determine that their testimony is competent evidence to support the trial tribunal's finding that claimant did not have an accidental injury.

Dr. L, claimant's medical expert, testified that claimant's disability was caused by his work done on February 27, 1963.

The medical testimony is in conflict. Where the issue is whether an occurrence amounted to an accidental injury and the evidence thereon is in conflict, the State Industrial Court, and not this Court, is the

sole judge of the credibility of witnesses and the weight to be given the testimony, be they lay or expert. Sanders v. Fischer Construction Co., Okl., 397 P.2d 144; Raska v. Tulsa Tiling Service, Okl., 397 P.2d 661; Brooks & McConnell, Inc. v. Strong, Okl., 396 P.2d 525; Hackley v. Dallas Nursing Home, Okl., 372 P.2d 586.

Since our review of the record and the arguments of claimant have demonstrated no valid cause for disturbing the order of the State Industrial Court, the same is hereby sustained.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, BLACKBIRD, IRWIN, BERRY and LAVENDER, JJ., concur.