William E. FISHER, Petitioner,

v.

DOUGLAS AIRCRAFT COMPANY, Inc., Industrial Indemnity Company and the State Industrial Court, Respondents.

No. 42263.

Supreme Court of Oklahoma.

April 16, 1968.

Johnson & Fisher, Tulsa, for petitioner.

Sanders, McElroy & Whitten, Tulsa, Charles R. Nesbitt, Atty. Gen., for respondents.

BERRY, Justice.

There is presented here for review an order of the State Industrial Court denying the claim of petitioner, claimant below, for compensation for an alleged heart disability against respondent, Douglas Aircraft Company, and its insurance carrier, Industrial Indemnity Company.

It is undisputed that on August 6, 1964, at approximately 10:15 A.M. while work-

ing for respondent as a hydraulic test mechanic at its plant in Tulsa, Oklahoma, claimant collapsed and was removed from the plant of respondent in its ambulance to a hospital; that claimant's collapse was caused by his sustaining an acute myocardial infarction of the heart from which he has been totally disabled since it occurred.

At the time he collapsed claimant was working in a rectangular sheet iron building approximately 52 feet long and 20 feet wide designated as the "bleed air compressor department." There were three doors in three walls of the building: two nine feet wide and the third eight feet wide. There was an electric oscillating fan in the building which was not being operated on August 6, 1964. Employees testified that the fan merely stirred up the hot air and was of no benefit to them.

Claimant with other workmen operated two compressors in the building. Claimant was required to sweep the building and wipe dust and accumulated oil from the compressors, and was performing such work on August 6, 1964. While cleaning up near one of the compressors claimant became nauseated, walked to a desk and sat down but became sicker and walked some fifteen feet outside the building. Becoming increasingly ill he returned to the building and sat down on the floor near a door, and upon becoming unconscious was removed to a hospital. The contention is that claimant's heart attack was caused by being required to work in "excessive environmental heat" in the compressor room.

The evidence relating to heat temperature in the compressor room is conflicting. The report of the U. S. Weather Bureau established the air temperature at Tulsa International Airport on August 6, 1964, to be 90 degrees at 9 A.M.; 93 degrees at 10 A.M.; 97 degrees at 11 A.M.; 100 degrees at Noon; 103 degrees at 1 P.M. These findings were made a short distance from the Douglas plant, and the place claimant was working.

Temperature inside the compressor room was higher than outside, due to heat generated by the operation of the compressors and other machinery. One workman testified air outside the compressor room generally was 10–15 degrees hotter than air at the airport; on days when there was little breeze the temperature inside the compressor would be 20 to 25 degrees hotter than the temperature outside, but admitted this was a guess or estimate. He testified that August 6, 1964, was just a normal hot August day, but no hotter than the days a few weeks before. A second workman testified temperature inside the building was about 15 to 20 degrees hotter than outside, but this was merely a guess.

Respondent submitted in evidence the results of certain temperature readings made at and near the compression room during the month of August, 1964. Summarized the report is as follows:

| Temperature degrees | Outside | Inside | Difference |
| --- | --- | --- | --- |
| Aug. 23, 1965, 9:00 A.M. | 75 | 83 | 8 |
| Aug. 23, 1965, 10:00 A.M. | 78.5 | 84 | 5.5 |
| Aug. 24, 1965, 9:00 A.M. | 82 | 91 | 9 |
| Aug. 24, 1965, 10:00 A.M. | 86 | 96 | 9 |
| Aug. 26, 1965, 9:00 A.M. | 89 | 93.5 | 4.5 |
| Aug. 26, 1965, 10:00 A.M. | 92 | 97 | 5 |
| Aug. 27, 1965, 9:00 A.M. | 88.5 | 97 | 8.5 |
| Aug. 27, 1965, 10:00 A.M. | 91 | 97 | 8 |

These readings establish that over a period of four days the average inside temperature was 7.2 degrees hotter than temperature outside the building.

Claimant concedes he was not subject to any unusual strain at the time of collapse. The work being done cleaning the room and wiping and cleaning the compressors, required no strenuous physical exertion. At the time of his collapse claimant was doing exactly the same work he had been doing at the same place and under the same working conditions for several years.

Claimant asserted no prompt claim for compensation following the alleged accidental injury. He made no request for medical treatment, but selected his own doctor. Form 3 was not filed until July 8, 1965, more than 11 months following the alleged injury. Meanwhile he accepted noncompensable health benefits of insurance policies provided by respondent. A portion of the medical and hospital expense was paid under policies specifically providing the claim was not compensable as a workmen's compensation claim.

On August 23, 1965, claimant filed application with the employer for total and permanent disability benefits. In the application he was required to answer certain questions as to whether claimed disability was due to an accident. He left this portion of the application blank. Another portion of the application, which required claimant to state whether claim for workmen's compensation benefits was being made, also was left blank.

On December 22, 1964, claimant settled a workmen's compensation claim against respondent arising out of an injury which occurred on January 28, 1964. At the hearing on joint petition settlement claimant was asked if he had any other claims for injuries and he answered "No."

The medical evidence is conflicting as to claimant's heart condition being caused or precipitated by claimant being required to work under conditions where the temperature was above normal.

Claimant submitted in evidence the medical report of Dr. W who stated "Mr. Fisher suffered an acute myocardial infarction, which probably was precipitated by working in extreme and unusual heat."

Dr. B stated: "It is my further opinion that the probable cause of his (claimant's) myocardial infarction and resulting injuries was the excessive environmental heat to which patient was subjected in his employment." Dr. B further stated: "It is well known that excessive environmental heat can cause tachycardia and vascular collapse, which in turn can result in myocardial infarction."

Neither doctor testified positively the exposure to heat caused claimant's myocardial infarction. Both doctors used the word "probable", and Dr. B stated "heat can cause" heart disability. Each doctor referred to the heat exposure as being 120 degrees. Although the evidence is in conflict the more persuasive evidence is reflected in actual temperature tests made indicating the temperature was approximately 105 degrees.

Dr. C testified by deposition for respondent in substance: claimant suffered from an old myocardial infarction to his heart and an artery disturbance throughout his body medically described as "arteriosclerosis"; as claimant was acclimated to working in the heat, he did not believe heat was a contributing factor to the heart attack; claimant's disability was not related to his employment with respondent.

■ In Riley v. Cimarron-Empire Construction Co. et al., Okl., 420 P.2d 550, we affirmed an order of the State Industrial Court, denying compensation for alleged heart disability, stating:

"The pattern of proof necessary to establish an accidental injury from work-connected strain or exertion consists of lay testimony concerning the nature of the labor performed by the workman at the time of injury and expert opinion that the exertion attendant upon such activity as shown by evidence was sufficient to produce and did produce the strain to which disability is sought to be ascribed. Both of these evidentiary components must be adduced before the fact of accidental injury and strain be established. Berryhill v. Pru-

dential Premium Co., Okl., 394 P.2d 520."

In Kelley v. Enid Terminal Elevators et al., Okl., 372 P.2d 589, we said:

"It is apparent in a heart disability case a claimant is not required to prove that the disability is the result of unusually heavy or unusually strenuous activity before being entitled to compensation. On the other hand, the fact that an employee sustains a heart disability during the course of his employment does not necessarily mean that the employee is entitled to compensation for a heart disability, like any other disability, is not compensable unless it arises out of and in the course of the employment concerned. See Ada Coca-Cola Bottling Co. v. Snead, Okl., 364 P.2d 696, 697."

In the present case it is admitted no "work-connected strain or exertion occurred." Claimant collapsed while performing the same tasks under the same working conditions which he had performed for several years. Claimant cannot recover compensation solely because he "sustained a heart disability during the course of his employment." Kelley v. Enid Terminal Elevators et al., supra.

We have held consistently the question whether a heart disability suffered by a workman resulted from strain or exertion arising out of and in the course of his employment, or from unrelated causes, presents a question of fact for determination of the State Industrial Court whose finding on such issue will not be disturbed by this Court on review when based on competent evidence reasonably tending to support such finding. Riley v. Cimarron-Empire Construction Company et al., supra; Griffin v. Flint Steel Corporation, Okl., 405 P.2d 63; C. T. Hughes Construction Company v. Phillips, Okl., 401 P.2d 498; Lea Machinery Company v. Emmons, Okl., 395 P.2d 857; Hefner Co. v. Lantz, Okl., 393 P.2d 845. The finding of the State Industrial Court is sustained by reasonably competent evidence.

Respondent also contends the trial judge's order denying compensation is too definite to be capable of judicial interpretation and review by the Industrial Court sitting en banc, or by this Court on appeal. The material portions of the order, approved by the Industrial Court en banc, are as follows:

"That claimant did not sustain an accidental personal injury, arising out of and in the course of his hazardous employment with the above named repondent, as alleged in his Form 3, or Employee's First Notice of Injury and Claim for Compensation; and therefore, claimant's claim for compensation is denied."

In Griffin v. Flint Steel Corporation, Okl., 405 P.2d 63, this Court had for interpretation a similar order denying compensation for an alleged heart disability. In holding the order sufficiently definite to apprise the claimant of the reason for denying his claim, we said:

"The primary issue was whether claimant sustained an accidental injury arising out of and in the course of his employment. If the court had found that claimant had sustained an accidental injury as alleged, then it would have been its duty to make further findings as to any benefits to which, under the evidence, claimant might have been entitled. However, since the court made the finding that it did, to-wit: that claimant did not have an accidental injury as alleged, it was unnecessary that it go further and make additional findings. The finding made was sufficient to dispose of the main issue presented.

\*    \*    \*    \*    \*    \*

"We feel in the present proceeding that the finding is clearly responsive to the decisive issue presented and is not too indefinite and uncertain for judicial interpretation and is sufficient for this court to properly review the matter."

To the same effect see McMurtrey v. American Assn. of Petroleum Geologists, Okl., 383 P.2d 215; Glasgow v. State Industrial Commission, 120 Okl. 37, 250 P. 138.

We are convinced after review of the record under the authorities cited that no valid reason exists for disturbing the order of the State Industrial Court.

Order sustained.

All Justices concur.