K. P. CONSTRUCTION COMPANY, INC., and the Travelers Insurance Company, Petitioners,

v.

In the Matter of the DEATH of James Oliver PARRENT et al., Respondents.

No. 48995.

Supreme Court of Oklahoma.

Jan. 12, 1977.

Sanders, McElroy & Carpenter by Jerry H. Holland, Tulsa, Ralph Smith, Oklahoma City, for petitioners.

Jerry D. Balentine, Yukon, for respondents.

BARNES, Justice:

A trial judge determined James Oliver Parrent died as a result of injury sustained from work-related heart attack during covered employment. Death benefits were awarded Claimant, surviving widow, who suffered pecuniary loss by reason of decedent's death. State Industrial Court en banc affirmed the trial judge's order and award. Petitioners, K. P. Construction Company, Inc., and the insurer, hereafter Respondents, have brought this proceeding for review to vacate this award.

Deceased, a 60-year-old truck driver, was employed by Respondents in September, 1973, without physical examination. Complaints of tiredness motivated Claimant to get deceased to doctor some two weeks prior to occurrence of heart attack. The physician advised deceased he was all right except for high blood pressure, for which medication was prescribed. Work involved driving a heavy dump truck, loaded with rock or sand, to various construction sites, which required driving 250–300 miles per day, sometimes during six-day work week, and occasionally cleaning the truck on Sunday. It was not unusual that deceased would be required to change as many as four flat tires a week, although sometimes assisted by another driver, deceased's son-in-law Croon. Deceased would get up each morning feeling well and leave for work at 4:30–5:00 a. m. For a month prior to November 16, 1974, deceased would return in late evening feeling bad, complaining of exhaustion and scarcely able to eat, and retire immediately. Payroll records showed deceased worked 76½ hours overtime during 16 days immediately prior to November 16, 1974.

On November 16, 1974, deceased and Croon left home by car about 4:30 a. m., checked and fueled their trucks, and began the day's hauling. While stopped for lunch in Snyder, Oklahoma, Croon observed deceased acted peculiarly, but upon inquiry deceased stated he had indigestion but would be all right. The trucks were driven to Childers, Texas, and unloaded, and returned to the plant near Altus with deceased in the lead. Upon arrival Croon observed deceased's truck had not been loaded, and deceased was dragging around, but finally got into his truck although pale and looking bad. After loading deceased stated he was unable to drive, and was taken about 15 miles in Croon's truck to reach deceased's car. Deceased attributed his condition to indigestion, but looked bad and was taken on without changing vehicles. Upon arrival home he was white, bathed in perspiration, complaining of chest pain and unable to sit up. Claimant and daughter, Croon's wife, arranged for ambulance removal to an Altus hospital where emergency treatment was administered. Diagnosis was acute myocardial infarction and severe supraventricular tachycardia. Deceased was under intensive care several days. Released to go home on November 27, 1974, deceased was under regular medication for sleep and nerves, and restricted to sitting up in bed.

December 11, 1974, Respondents' adjuster appeared at the home and tape recorded an interview with deceased concerning his work, daily activities and prior health. Pointedly establishing deceased's consent to giving a statement, interrogation was directed to eliciting answers showing deceased expended no unusual effort and did not consider his work stressful; was not subjected to mental or emotional strain and

did not feel bad; knew of no job-related activity except long hours which could have provoked onset of attack. Attack occurred while deceased was sitting in truck, without having engaged in strenuous activity, when stricken by sickening chest pain. The interviewer admittedly did not advise deceased the statement was to be used in the case.

That evening deceased again required emergency hospitalization. Medication did not restore normal heartbeat and it was necessary to resort to electric shock treatment to relieve paroxysmal auricular tachycardia. After another episode on December 26th deceased was transferred to a Lawton hospital, treated and returned home. Hospitalized again for emergency treatment on February 3, 1975, deceased was discharged home February 14, 1975, but expired from myocardial infarction due to cardiac arrythmia on February 17, 1975.

Claimant's evidence concerned deceased's work routine, and apparent exhaustion the two or three months prior to accident, particularly the last month when deceased would return from work completely exhausted. Witness described deceased's condition and apparent illness upon arrival home, with chest pains and later overcome by nausea. Prior to this, deceased had never missed a day's work from illness, and had not complained of chest pains. On return from hospital after first episode deceased was bedfast, under strong medication, not getting along well, and was vague about things. Claimant answered part of the questions asked during the recorded interview because she did not think deceased understood what he was saying. .

The witness Croon testified the work was hard because of constant need to rush. Deceased did not act right when they stopped for lunch on November 16th, and was looking bad and dragging around when they arrived back at the sand plant near Altus. After trucks were loaded and at the scales deceased said he was unable to drive, and they began the journey home in Croon's truck. Deceased looked bad, although stating he had indigestion. Witness recalled assisting deceased in changing a tire on November 15th—this was nearly a daily occurrence—and each usually helped the other when this occurred.

Four contentions presented as grounds for vacating this award are based upon evidentiary consideration. Supporting argument in each rests entirely upon a premise evolved from Respondents' interpretation of weight and quality of evidence. Each premise, in turn, is measured by novel application of rules of evidence stated in equity cases, tort actions, or Federal criminal cases, as basis for the conclusion this award cannot be sustained.

■ Whether heart attack sustained by a workman arose out of and in course of employment, or from other cause unrelated to or disconnected from employment, presents a fact question for State Industrial Court determination. *Bill Gover Ford Co. v. Roniger,* 426 P.2d 701 (Okl.1967). Settled law declares Supreme Court, when reviewing State Industrial Court orders, neither weighs conflicting evidence nor determines preponderance thereof, but reviews the entire record only to ascertain whether there is any reasonable competent evidence to sustain the order or award. *Goombi v. Trent,* 531 P.2d 1363 (Okl.1975); *Dayton Tire & Rubber Co. v. Vires,* 538 P.2d 194 (Okl.1975). The present review is confined to determining whether this award is sustained by any competent evidence.

The first contention asserts complete lack of evidence, showing deceased sustained accidental injury arising out of and in course of employment, requires vacation of this award. Respondents admit occurrence of heart attack on the job, and the fact deceased worked long hours prior thereto. They insist, however, these facts establish no predicate for concluding attack was precipitated or caused by strain and exertion. Although deceased may have sustained injury, no reason appears from *best evidence available* injury arose out of employment. Thus, without evidence showing "this necessary ingredient" this award cannot be sustained in view of decisions in *Fisher v. Douglas Aircraft Co.,* 440 P.2d 708 (Okl.

1968), and *Liebmann Arctic Ice Co. v. Henderson,* 486 P.2d 739 (Okl.1971).

It is necessary only to note *Fisher, supra,* applies the rule not every injury which occurs during employment is compensable. In that case it was admitted claimant had not suffered either work connected strain or exertion. This is a distinguishing factual consideration.

*Henderson, supra,* simply reiterates a recognized requirement injury must be a result of risk reasonably incident to employment. And causal connection between work conditions and resulting injury must be present. Thus an injury attributed solely to claimant's anger was not risk reasonably incident to employment as a matter of law. Distinction between *Henderson* and the cause now reviewed is apparent.

■ No need arises to review and analyze decisions which are contrary to Respondents' position. Many decisions declare unusual exertion, or unusual strain, are neither statutory nor legal prerequisites to establish compensability of work-related heart attack. Evidence which factually and medically shows causal relationship between heart attack and the sum total of a workman's antecedent efforts, which were stressful for him, is sufficient. *H. J. Jeffries Truck Line v. Grisham,* 397 P.2d 637 (Okl.1964); *Bill Gover Ford Co. v. Roniger, supra; Black, Sivalls & Bryson, Inc. v. Bass,* 506 P.2d 902 (Okl.1973); *Meadow Gold Dairies v. Oliver,* 535 P.2d 290 (Okl.1975).

In *Roniger, supra,* syllabi 2, 3 and 4 state the controlling rules:

"2. An internal injury of a sudden, unusual and unexpected nature may be accidental in character, although its external cause may be attributable to ordinary work performed in a normal manner and without any untoward incident connected therewith.

"3. An accidental injury within the meaning of the Workmen's Compensation Act need not be attributable to one particular event but may arise from the cumulative effect of a series of exertion episodes.

"4. That over exertion or strain causing the death or disability of an employee is more mental than muscular does not preclude an award of compensation, since the term 'exertion' or 'strain' is not confined in its use to muscular efforts, but means in the act of putting some power or faculty into vigorous action; a strong effort, either of the body or the mind."

■■ Extensive argument claiming lack of competent evidence is advanced under two interdependent propositions, which are considered jointly. One asserts right of action for death benefits under Workmen's Compensation Act, 85 O.S.1971, § 1, et seq., accrues in the same manner as right of action accrues to decedent's personal representative for wrongful death under 12 O.S. 1971, §§ 1051–1054, inclusive. Therefore, Claimant's right to claim death benefits were derivative of deceased's rights, had he survived. Respondents then refer to the decision in *Haws v. Luethje,* 503 P.2d 871 (Okl.1972), which held right of action, by personal representative, for wrongful death abated upon deceased's execution of release with prejudice. Respondents equate deceased's tape recorded statement as having the same effect as the release in the *Haws* case. We do not agree that this is a release. The statement was admissible, but it was to be weighed by the trier of facts along with the other testimony.

The final contention is:

"Where the plaintiff's case rests upon the testimony of a witness whose examination so explains or qualifies his prior testimony as to leave the fact of which he testifies a matter of conjecture, possibility or guess, his testimony will be construed as a whole to be so lacking probative force as to not entitle him to an order awarding compensation."

A twofold argument is offered to support this claim. The first is presented on the basis the recorded statement was the best evidence. This does not require consideration.

The second urges lack of probative value of deposition testimony from Claimant's ex-

pert witness because based upon conjecture, guess and speculation. Guess and conjecture purportedly are found in admission deceased suffered from hypertension, cigarette smoking, cardiac arrythmia and arteriosclerosis. Because the physician acknowledged these conditions were contributing factors, any of which could have caused heart attack without regard to stressful employment, Respondents insist the medical evidence was based upon guess, conjecture and speculation, and cannot support the award.

 The hypothetical question presented Claimant's medical expert was consistent with facts Claimant's evidence fairly tended to establish. A hypothetical question which fairly recites relevant and material facts in evidence is a proper basis for formation of admissible opinion by an expert witness. *Farmers Co-op Exchange of Weatherford v. Krewall,* 450 P.2d 506 (Okl.1969); *Sooner Const. Co. v. Brown,* 544 P.2d 500 (Okl. 1975).

From factual matters stated in hypothetical question, the physician was of the opinion physical and mental activity, and strenuous effort during long work hours and resulting chronic fatigue caused, aggravated or contributed to deceased's death. There was competent evidence showing deceased's developing fatigue. The factual background in this case is comparable to that considered in *Meadow Gold Dairies v. Oliver, supra,* wherein syllabus 1 states:

"Whether a heart attack suffered by a workman resulted from strain and exertion arising out of and in the course of his employment or from other causes which are unrelated thereto and disconnected therefrom, presents a question of fact for the determination of the State Industrial Court, whose findings on such an issue will not be disturbed on review when based on competent evidence reasonably tending to support it."

 Argument that Claimant's medical evidence is without probative value and cannot support this award is unpersuasive.

Award sustained.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY, SIMMS and DOOLIN, JJ., concur.

HODGES, C. J., concurs in result.