2010 OK CIV APP 63

K. Phil FLEETWOOD,
Plaintiff/Appellant,

v.

CHEVRON U.S.A. PRODUCTION
COMPANY, and Chevron U.S.A.
Inc., Defendants/Appellees,

Chesapeake Operating, Inc.; Linda Goldenstern; Joe Marko Goldenstern; Amerada Hess Corporation; Jay Allen Stolper; Scott Stolper, Trustee of the Stolper Family Trust dated January 11, 1990; Andrew Stolper, Trustee of the Stolper Family Trust dated January 22, 1992; and Jordan Stolper, Trustee of the Stolper Family Trust dated October 25, 1996, Defendants.

No. 106,849.

Court of Civil Appeals of Oklahoma,
Division No. 1.

March 25, 2010.

Certiorari Denied June 1, 2010.

Kent P. Sullivan, Leach, Sullivan, Sullivan & Watkins, L.L.P., Duncan, OK, for Plaintiff/Appellant.

Richard B. Noulles, Gable Gotwals, Tulsa, OK, for Defendant/Appellees.

WM. C. HETHERINGTON, JR., Judge.

¶ 1 K. Phil Fleetwood (Fleetwood) appeals the denial of judgment in his favor as to all Defendants [1] and the entry of judgment in favor of Chevron U.S.A. Production Company and Chevron U.S.A. Inc. (Chevron) on his claim attacking the validity of a Receiver Oil and Gas Lease (Receiver Lease). Fleetwood's challenge of the receivership is untimely. Consequently, the trial court order finding his interest is subject to the leasehold rights of Chevron is **AFFIRMED.**

### FACTS

¶ 2 There is no dispute Bokma Oil Company was established as a Delaware corporation in 1919, or how, through various mineral conveyances, an undivided one-fourth interest in and to all oil, gas and other minerals in and under and produced from the N/E/4 of the S/W/4 of Section 33, Township 3 North, Range 5 West, I.M. Grady County, Oklahoma, (the Section 33 property) was transferred to Bokma by April 7, 1924. Bokma's Delaware corporate charter status became void and suspended on April 1, 1932, by that state due to non-payment of franchise taxes, and in conformity with Delaware's requirements January 1933.[2]

¶ 3 At the time of the suspension, Bokma had 140,000 shares of issued and outstanding stock. In the 1920s, Bokma was a Delaware Corporation primarily operated by B. Weis.[3]

---

1. Prior to entry of the order on appeal, Fleetwood dismissed with prejudice his claims against Jay Allen Stolper; Scott Stolper, Trustee of the Stolper Family Trust Dated January 11, 1990; Andrew Stolper, Trustee of the Stolper Family Trust Dated January 22, 1992; and Jordan Stolper, Trustee of the Stolper Family Trust Dated October 25, 1996. An assignment in late 1994 granted these individuals and trusts a 0.625% overriding royalty interest out of the interest of Defendants Linda Goldenstern and Joe Marko Goldenstern. Linda Goldenstern was the plaintiff in the 1994 receivership proceedings. According to Fleetwood, she also owns a 15% working interest from leases and/or assignments in 1957 and 1974.

2. According to the record, Bokma had registered to do business in Oklahoma as a foreign corporation on January 21, 1930, but that authorization was cancelled on May 20, 1935 by the Secretary of State of the State of Oklahoma.

3. There does not appear to be any dispute "B. Weis" is "Berthold Weis," who died in 1945. His 1939 will was probated and made dispositions of his property. His surviving wife, Fanny Weis, died on February 13, 1971.

According to his will, he died leaving two sons, LeRoy Weis and Richard Weis, who are the individuals through whom Fleetwood claims he obtained title by way of a 1998 Delaware corporate reinstatement proceeding and subsequent conveyances. The record before us indicates the original Bokma corporation had 250 shareholders, with LeRoy Weis owning approximately 1/10 of 1% of Bokma stock. Fleetwood later claims the surviving Weis brothers recalled that their father may have bought out all of the shareholders and obtained 100% of the stock prior to the corporation losing its corporate status.

¶4 In pooling proceedings before the Oklahoma Corporation Commission, LeRoy Weis filed an "Appearance and Answer Of LeRoy Weis on Behalf of Himself and All Stockholders of Bokma Oil Company, A Delaware Corporation, and Other Persons Claiming By, Through or Under Said Corporation" (1957 Appearance) on February 20, 1957. He asserts Bokma was no longer an existing corporation, Bokma had no officers or directors authorized to transact its business, and if there were still other shareholders alive, they are scattered in various locations. He described the difficulty and expense of reinstating the corporate status in Delaware in compliance with the necessary reinstatement legal requirements and identified Bokma's principal stockholders as "B. Weis, R. Reich, M. Sabath and Rudolph Lederer, all of whom are deceased." [4]

¶5 The Receiver Lease was the result of a "Petition For Determination That Mineral Owner is Unlocatable, Authorization Of Sale Of Oil and Gas Lease and Appointment Of Receiver" filed against Bokma on July 22, 1994, by an individual with an interest in mineral acres underlying those held by Bokma (the Lease Suit). The Lease Suit petition sought an order determining Bokma was unlocatable, authorizing the sale of an oil and gas lease, and appointing a receiver for Bokma. The petition includes an assertion a third party is willing to purchase an oil and gas lease covering Bokma's interest "in the Subject Premises, less and except the Second and Third Bromide Sands," for a three year term with a 3/16ths royalty and $150.00 per acre bonus payment, which is "consistent with other leasing activity in the area."

¶6 An August 18, 1994 Order in the Lease Suit, quieted title in the minerals and allowed for the leasing of the acreage by receiver for three years with a minimum bonus of $152.00 per acre and a 3/16th royalty. The receiver leased the Bokma interest to Chesapeake Operating, Inc., which thereafter assigned a portion of its interest in one well and its interest to the base of the Viola formation to Chevron. Chevron was not a party to the receivership proceedings and its interest was acquired approximately two years before Fleetwood filed the instant action.

¶7 The record shows this litigation was filed by Fleetwood after Chevron had obtained interests and drilled wells and after LeRoy Weis's March 25, 1998 filing in Delaware of a "Certificate Of Renewal, Restoration Or Revival Of Certificate Of Incorporation" for Bokma and a "Written Consent of Stockholders of Bokma Oil Company" in which he alleged he and his brother Richard were the record owners of a majority of the Bokma stock. LeRoy Weis was able to obtain a reinstatement order based upon these representations.[5]

---

4. According to a documents filed March 1, 1957 in the pooling proceedings, Bokma's fractional interest was 1.5625% in the entirety of Section 33, Township 3 North, Range 5 West in Grady County, Oklahoma and it is the only interest listed as "unleased."

5. Under 8 Del. Gen. Corp. L. § 312, renewal or revival of a corporation suspended or which became "inoperative for nonpayment of taxes," may be procured by filing a "Certificate Of Renewal, Restoration Or Revival." The statute provides the certificate must be "filed by authority of those who were directors or members of the governing body of the corporation at the time its certificate of incorporation expired or who were elected directors or members of the governing body of the corporation as provided in subsection (h) of this section." 8 Del. Gen. Corp. L. § 312(d)(6). Subsection (h) further provides that if there are no directors or officers of the corporation, "the stockholders may elect a full board of directors, as provided by the bylaws of the corporation, and the Board shall then elect such officers as are provided by law. ...." Finally, 8 Del. Gen. Corp. § 216 allows, absent a provision in the certificate of incorporation or bylaws specifying the votes necessary for a quorum, that a majority of shares is required for a quorum and directors are to be elected by a plurality of the shares present in person or by proxy.

¶ 8 In an April 17, 1998 letter, Fleetwood confirms an agreement with LeRoy Weis pursuant to which, among other things, Le-Roy Weis as Bokma's president will sell Fleetwood its mineral interests in the Section 33 property which is leased to Chevron, and Fleetwood will re-convey a half interest in the Section 33 property mineral interests back to LeRoy Weis or his designate. Fleetwood agreed to attempt to negotiate "a more favorable oil and gas lease" for the minerals in the Section 33 property "and also attempt to release any deep mineral rights." Fleetwood then obtained a quit-claim deed for the acreage from Bokma through LeRoy Weis, acting as its president.[6]

¶ 9 Fleetwood filed the quit claim deed from Bokma of record in Grady County on April 27, 1998. He claims an ownership interest in one-half of all net royalties, bonuses, rentals and other benefits obtained from Bokma's former interest. This action by Fleetwood was filed December 15, 1998.

¶ 10 In his motion for summary judgment, Fleetwood argues the Receiver Lease conveyed no interest to Chevron, claiming the Lease Suit Order under which the receiver was appointed and the lease interest sold to Chevron were void. He argues publication notice was insufficient, failed to meet minimum due process, and was void for lack of subject matter jurisdiction because the Lease Suit plaintiff had failed to plead and prove a necessary element required by 52 O.S.2001 § 521, et seq.

¶ 11 Chevron's response and counter motion for summary judgment argues the receivership is not void because the judgment roll for that proceeding establishes the trial court had jurisdiction over Bokma and due process requirements were met. Chevron also argues Fleetwood's action was filed outside of the time allowed under 12 O.S.2001 §§ 1031 and 1038 and he may not collaterally attack the Lease Suit Order.

¶ 12 The Order appealed finds Chevron's interest is as an assignee of leasehold rights from the surface down to, but not below, the base of the Viola formation under a lease from the Receiver. The trial court entered an order pursuant to 12 O.S.2001 § 994 finding there is no just reason for delay in the filing of final judgment as to the claims between Fleetwood and Chevron, Fleetwood was not entitled to any relief on his claims against Chevron, and any interest Fleetwood holds is subject to Chevron's interest.

## STANDARD OF REVIEW

■ ¶ 13 ·In determining whether summary adjudication was appropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and Chevron was entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Plaintiff. *Ross v. City of Shawnee,* 1984 OK 43, 683 P.2d 535. We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Company,* 1985 OK 25, 698 P.2d 17.

¶ 14 We review the trial court's grant of summary judgment *de novo* and, while viewing all evidentiary materials in the light most favorable to the nonmoving party, independently decide legal issues resolved by the trial court. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. "To prevail as the moving party on a motion for summary adjudication, one who defends against a claim by another must either (a) establish that there is no genuine issue of fact as to at least one essential component of the plaintiff's theory of recovery or (b) prove each essential element of an affirmative defense, showing in either case that, as a matter of law, the plaintiff has no viable cause of action." *Akin v. Missouri Pacific Railroad Co.,* 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044.

---

**6.** According to an Illinois State Bar Association notice attached as an exhibit to Chevron's motion for summary judgment and response to Fleetwood's motion for summary judgment, Le-Roy Weis died, at age 95, on October 18, 1999.

## ANALYSIS

¶ 15 The record is clear that Bokma lost its corporate status in Delaware in 1932 and its authorization to conduct business in Oklahoma in 1935. Fleetwood argues the 1994 receivership is invalid and void because the verified petition requesting the appointment lacks the assertion required by 52 O.S. 2001 § 522(a)(5) "that the plaintiff has acquired or has good reason to believe that he can acquire operating rights covering all mineral interests other than the interest of said defendants in said tract or tracts." He contends this defect is apparent by inspection of the judgment roll in the receivership and the trial court, therefore, lacked both subject matter jurisdiction and the authority to render judgment. He also argues notice by publication was ineffective because either LeRoy Weis or Richard Weis should have been found using Chicago area telephone books, and this would have led to information to notify Bokma.[7]

¶ 16 In support of its motion for summary judgment and to refute Fleetwood's claims of lack of effort in a search for contact information, Chevron presented portions of the deposition testimony of Jeff Williams, the landman who conducted the search for Bokma's contact information. His search, which he noted was conducted before the internet was available, included contacting Chicago area directory assistance and securing listings from Chicago area telephone books at the Oklahoma County Library for persons with the same last names of the four original corporate officers (Weis, Sabath, Reich, and Lederer), as identified by LeRoy Weis in the 1957 Appearance. Williams testified he called each person so identified but none of the persons contacted had information about Bokma or were identified as stockholders or heirs of a Bokma stockholder.

¶ 17 The plaintiff in the Lease Suit did not personally conduct a search, but the record contains evidence such a search was performed on her behalf. Service by mail was attempted but was unavailing. The trial court's order in the Lease Suit states it appointed a receiver after consideration of the record, the verified petition, "and the evidence presented at the time of the hearing on said petition."

¶ 18 The long-recognized rule is, as the Court stated in *Edwards v. Smith*, 1914 OK 342, ¶ 0, 142 P. 302, 42 Okl. 544, that "[a] judgment is not void in the legal sense for want of jurisdiction, unless its invalidity and want of jurisdiction appears on the record; it is voidable merely." We do not agree with the contention the judgment roll at issue here from the Lease Suit is tainted by a fatal defect because it fails to affirmatively show what active and diligent efforts were taken regarding service. *Bomford v. Socony Mobil Oil Co., Inc.*, 1968 OK 43, 440 P.2d 713. Unless a record affirmatively shows a want of jurisdiction, every fact not negatived by that record is presumed in support of the judgment of a court of general jurisdiction, and "where the record of the court is silent upon the subject, it must be presumed in support of the proceedings that the court inquired into and found the existence of facts authorizing it to render the judgment which it did." *Bowling v. Merry*, 1923 OK 435, ¶ 0, 217 P. 404, 91 Okl. 176. Applying this rule to the judgment roll in the Lease Suit, we conclude minimum due process standards were met in that proceeding and it was not void but, at best, voidable.

¶ 19 Chevron argues Fleetwood's attack on the judgment in the Lease Suit both is collateral and is untimely. An attack is collateral when it seeks "to avoid, defeat, evade, or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial." *Nilsen v. Ports of Call Oil Company*, 1985 OK 104, n. 5, 711 P.2d 98, 106. "Where a judgment forms a link in a litigant's chain of title, and the opposing party, plaintiff or defendant, in his pleadings, or by objecting to its introduction in evidence, assails its validity for defects in the record on which the judgment is based, the attack is collateral and not direct."

---

7. The petition in the receivership states an effort had been made to locate LeRoy Weis. At hearing on the motions herein, counsel for Chevron pointed out that notice of the receivership was due the interest owner, which was Bokma, not individual shareholders such as LeRoy Weis.

*Pettis v. Johnston,* 1920 OK 224, ¶ 40, 78 Okla. 277, 190 P. 681, 694. In a collateral attack on a judgment, the court's inquiry may not extend beyond a determination whether the assailed judgment affirmatively disclosed a lack of jurisdiction and consequently is void on its face. *Farmers' Union Co-operative Royalty Company v. Woodward,* 1973 OK 128, 515 P.2d 1381. "Where extrinsic evidence is needed to show the jurisdiction's absence, the decision is not facially invalid although it may be declared voidable." *Ashikian v. State ex rel. Oklahoma Horse Racing Commission,* 2008 OK 64, 188 P.3d 148, 155. "A district court judgment or order is facially void if, on an inspection of the judgment roll, it is apparent that one or more of the requisite jurisdictional elements—that of the subject matter, *in personam* cognizance, or the court's power to render a particular decision—is shown to have been absent." *Halliburton Oil Producing Co. v. Grothaus,* 1998 OK 110, ¶ 10, 981 P.2d 1244, 1249. (Footnote omitted.)

¶ 20 The question Fleetwood presents is whether the failure to include the § 522(a)(5) affirmation in the verified petition in the Lease Suit poses a facial defect fatal to jurisdiction or whether it presents an irregularity in the course of obtaining judgment. We conclude the defect presents the latter, an "irregularity in obtaining a judgment or order."

¶ 21 Having so concluded, Fleetwood's action falls within the ambit of 12 O.S.2001 § 1031 (Third), regarding "mistake, neglect or omission of the clerk or *irregularity in obtaining a judgment or order,*" (emphasis added), and an action to challenge such a judgment or order must be commenced within three years of the judgment. 12 O.S.2001 § 1038. Fleetwood's petition was not filed within this time limitation.

8. Chevron also asserts Fleetwood acquired no interest in the tract and has no right to challenge Chevron's interest, claiming Fleetwood fraudulently obtained reinstatement of Bokma's corporate status and any purported conveyance from that fraudulently reinstated corporation to Fleetwood was legally insufficient, invalid, and passed no interest to him. Proof of this allegation would require consideration of evidence extrinsic to the judgment roll for the Delaware reinstate-

¶ 22 Fleetwood's December 15, 1998 Petition was a collateral attack on the August 18, 1994 judgment in the Lease Suit and, as a matter of law, the attack was untimely pursuant to § 1038 and § 1031(Third).[8] The trial court order granting Chevron judgment and denying Fleetwood's requested relief is **AFFIRMED.**

BUETTNER, P.J., and HANSEN, J., concur.

ment proceedings. Having determined Fleetwood's challenge is untimely, we need not address this issue, but do note Delaware precedent holds that "once a charter has been renewed and revived only the State can institute proceedings to void it on the ground that the parties applying for such renewal and revival were not authorized to do so." *Engstrum v. Paul Engstrum Associates, Inc.,* 36 Del.Ch. 19, 23, 124 A.2d 722, 724 (1956).