## STATE ex rel. H. F. WILCOX OIL & GAS CO. v. WALKER et al.

No. 25691.   July 31, 1934.

Armstrong & Murphy, for plaintiff.

Edwin Dabney, for defendants.

Hayes, Richardson, Shartel, Gilliland & Jordan, amici curiae, representing protesting producers.

WELCH, J.   The plaintiff seeks by mandamus to compel the defendant, the Corporation Commission of the state, to grant plaintiff a trial and hearing on the application of plaintiff heretofore presented to the Commission for an adjustment of the determined capacity of certain oil wells to produce oil, or an adjustment of the potential production of oil from said wells.

The oil wells in question are in the Oklahoma City field, and are owned and operated by the plaintiff and produce oil from the supply or reservoir defined or designated as the Wilcox sand or Wilcox zone.

The Commission has authority to regulate the taking of oil from the Wilcox zone by

reason of the operation of chapter 131, S. L. 1933, and prior legislation covering the same subject-matter. It is the purpose of that act that the taking of oil from a common source of supply shall be restricted and ratably prorated whenever the unrestricted taking of oil therefrom cannot be permitted without waste. The Wilcox zone is one of such common sources of supply, and had been determined so to be, and for some years the Commission had therefore regulated the taking of oil therefrom, and had undertaken to provide for the ratable taking of oil therefrom by those producers taking and entitled to take oil therefrom.

It was necessary that the Commission determine the capacity of the various wells to produce oil, or their potential production, and then permit the various wells to produce such portion of their potential as would amount to a ratable taking by all. The Commission went forward with that policy, and has so handled the matter under the cited act and prior legislation.

At a proper time in April, 1933, the Commission made tests and took or determined the potential of all oil wells in the Wilcox zone. Shortly prior thereto, and on April 5, 1933, the Commission had issued its order No. 2221 prohibiting the "shooting" of any of such wells. This "shooting" is referred to as the explosion of nitroglycerin or other high explosives in the well for the purpose of bettering the condition of the well and immediately increasing the flow of oil. It had that effect at that time. The plaintiff had not recently shot its wells, but various other producers in the zone had shot their wells shortly before the nonshooting order of the Commission. The result was that when the Commission took the potentials of the various wells in the Wilcox zone some of them were producing under the acceleration of a recent shooting, while the wells of the plaintiff were not in such favorable condition. From that time forward the changing potentials of the wells in the zone were from time to time calculated and determined and fixed by the Commission.

It is the position of the plaintiff that its several oil wells have been discriminated against, or that discrimination resulted from the fact that the potentials and allowable production of other oil wells in the zone were based upon and fixed from their accelerated production by reason of recent "shooting," while the potentials and allowable production of the plaintiff's wells were based upon and fixed from ordinary or level

production not accelerated by any recent "shooting," and that by the action of the Commission they were prevented from "shooting" their wells.

The foregoing facts were, in substance, alleged by plaintiff in an application presented to the Commission on the 15th day of June, 1934, in which application the plaintiff sought trial and hearing before the Commission and an adjustment of the potentials and past allowable production from plaintiff's wells, such as would amount to an allowance to the plaintiff sufficient to constitute the taking of oil from its wells to be ratable and in proportion with the allowable takings during the same period of the other wells from the same zone.

One of the members of the Commission was of the opinion that the Commission had no authority whatever to consider plaintiff's application and to hear the same or to grant plaintiff any relief. Another member of the Commission was in doubt about the matter, but joined in the conclusion of lack of authority, upon his statement that he so acted in order that the matter might be presented to this court before any action was taken by the Commission. The remaining member of the Commission was of the opinion that the Commission had ample authority to hear the matter and grant relief if the plaintiff should show itself clearly entitled to relief, and he so expressed himself in a dissenting opinion dissenting to the action of the majority of the Commission refusing to hear or consider plaintiff's application.

It is asserted, in substance, by the plaintiff that it is the clear duty of the Commission to hear the application, and they assert their right to compel performance of such duty by mandamus.

It having been determined by the Corporation Commission that oil wells could not be permitted to produce oil at full capacity from the Wilcox zone without waste, it then became the duty of the Commission, in all cases as nearly as possible, to permit each well to ratably produce oil therefrom. With a great many oil wells producing oil from such common supply it was undoubtedly difficult to establish the exactly equitable and ratable taking by each producer. We are thoroughly satisfied that the Commission had proceeded with an earnest desire to accomplish the exact requirement of the law, but there is a continued duty upon the Commission to so conduct the management and control of the production of oil under the act as to continue the ratable taking by all

of the wells. as fairly as may be ascertained and permitted, with due regard to any condition or circumstances that might result in an unintended discrimination against any producer. And if any rule or action of the Commission, though well founded in purpose, should in operation result in discrimination against a producer, then upon application of such producer the Commission would have the authority to remove and correct such discrimination. It is within the contemplation of the act, chapter 131, S. L, 1933, that overproduction might result and be observed in the case of certain wells, and that such overproduction should thereafter be equalized by reduced production. It was likewise within the contemplation of the act that certain wells might be shown to have been inequitably restricted or unratably restricted as to production. The resulting underproduction or shortage of the production that should have been allowed might be compensated or adjusted or equalized by future permitted overproduction to an equalizing extent. The application of the plaintiff to the Corporation Commission was based upon such an interpretation of the act, and by that application the plaintiff sought to have the Commission determine whether or not a discrimination had resulted against the plaintiff causing it to suffer an underproduction or improperly restricted production, and seeking to have the same equalized by adjusted potential with a resultant allowance of overproduction or production in addition to that previously allowed in order to grant plaintiff a ratable taking of oil from its wells which, with the wells of other producers, tap the common source of supply.

By attorneys appearing amici curiae, or in behalf of other producers of oil from the Wilcox zone, it is insisted that the plaintiff cannot proceed in mandamus, but must proceed by appeal, and that the Corporation Commission has no authority to hear and determine plaintiff's application, and that the nonshooting order of the Commission on the 5th day of April, 1933, was void according to the subsequent holding of this court in another action, and that since it was void the plaintiff might have ignored the same and have proceeded with the shooting of its wells and thereby have received the benefits of accelerated production, and that, since the plaintiff failed to so act, plaintiff cannot now be heard to request the relief sought in the application. We do not now pass upon the question whether the nonshooting order was void or valid. That order was made on April 5, 1933. Thereafter, in Wilcox Oil & Gas Co. v. Walker et al., 168 Okla. 355, 32 P. (2d) 1044; this court held that certain other orders of the Commission in reference to the fixing of potentials and allowables, and in reference to oil proration, were not valid orders. This particular nonshooting order was in no manner involved in that action. It is contended that the Commission never made any order vacating the nonshooting order. It remained as an order of apparent validity. It was followed and complied with by the plaintiff. It appears to be the position of parties adverse to the plaintiff that the plaintiff should have noted and observed the invalidity of the nonshooting order, and should therefore have disregarded it, and should have shot its wells without any regard to the nonshooting order, or in defiance thereof. We cannot follow that contention to the conclusion that the plaintiff should be penalized for failing to defy or ignore that order of the Commission. We think the strict validity of that order is not material here for the reason that if any act or order of the Commission, however technically invalid, should result in actual discrimination against one producer of oil from a common source of supply, the Commission should correct it and make ratable adjustment when the matter is called to their attention and presented.

We agree with the contention of the plaintiff that it was the duty of the Commission to grant the plaintiff a hearing upon the application and to consider the matter.

It was the duty of the Commission, after such hearing, to determine the rights of the plaintiff and to grant the plaintiff such relief, if any, as the hearing on the matter disclosed the plaintiff entitled to receive, or to deny the plaintiff any relief if the showing presented by plaintiff upon hearing does not disclose any right to relief.

The exact determination of the matter by the Commission, that is, the conclusion to be reached after a hearing, may not be controlled by mandamus. That determination must be made by the Commission, but it can only be made after a hearing and after an opportunity is accorded the plaintiff to present his application and the showing and proof in support thereof, and the Commission may be required by mandamus to grant the plaintiff a hearing, and to hear and consider the matter and to determine it at the conclusion of the hearing by either

granting or denying relief. Then from such a determination an appeal will lie.

As against the plaintiff it is urged that the plaintiff should have appealed from the refusal of the Commission to hear plaintiff's application, and that therefore plaintiff's action for mandamus must fall. At least in this action that contention as to the method of entrance into this court seems to present somewhat of a distinction without a difference. The question for determination here is whether or not the Commission should hear and determine the plaintiff's application for relief. Parties in interest adverse to the plaintiff cite authorities holding that when a trial court in a cause pending before it has considered a plea to the jurisdiction, and has determined no jurisdiction, that such judgment and decision, if erroneous, should be reviewed on appeal and not by mandamus. With that general rule we agree. In such an action the trial court with a cause pending before it has considered the cause and judicially determined its lack of jurisdiction, and has disposed of the cause by a judgment to that effect. These authorities are not applicable here. The Corporation Commission is not a court; however, it does possess certain authority which might be termed judicial in character. Strictly speaking, there was no cause pending before the Commission as was pending before the trial courts in the authorities cited. There was here an effort on the part of the Wilcox Company to show the Commission that by its acts in the administration of the proration law a serious discrimination had resulted and was resulting against the company. The company was asking a hearing on the matter and a correction of an alleged burdensome discrimination. That body, in this instance, did not hear and consider plaintiff's application, but erroneously declined or refused to entertain the matter. If the matter had proceeded far enough before the Commission to constitute a hearing and determination and refusal of relief to the plaintiff upon the theory of lack of authority of the Commission to grant an adjustment of an established serious discrimination, then even on appeal this court would have been forced to the determination that such denial of relief was erroneous. No good cause is shown by logical reasoning, or by applicable authority, why we should now deny the plaintiff relief in mandamus and require that he proceed further before the Commission until he should be able to obtain an adverse order which was appealable, and then appeal to this court in order to present the question of the plaintiff's right to a hearing of his application by the Commission.

It was the duty of the Commission to hear the matter and thereafter to determine it and to grant or deny relief as should be shown to be right and proper. That was necessary in order to carry out the legislative policy, plan, and program of oil conservation, and of prorating or regulating the ratable taking of oil from this common source of supply.

In Sterling Refining Co. v. Walker et al., 165 Okla. 45, 25 P. (2d) 312, this court, speaking through Mr. Justcie Busby, said:

"Fair dealing and common justice, as well as the statutory provisions, demanded that if the state is to exercise its power to limit the production of oil from a common source of supply, it must likewise prevent the different producers from taking an unratable portion of the oil therefrom."

And in the same opinion it was further said:

"It is the duty of the Corporation Commission to administer the law in such a manner that unjust, unfair, and illegal advantages cannot be had. While hasty and ill-considered action should not be taken by the Commission, yet the rights of the various operators should be speedily determined, and unreasonable delay should be avoided. The rapidly changing conditions of the oil fields demand a proper and prompt administration of the law. * * *

"This court cannot indorse or place the stamp of approval upon the act of an operator who violates or ignores the provisions of the law or the orders of the Corporation Commission. * * * Nor will it indorse the act of the Corporation Commission if it unnecessarily delays hearings to subvert the ends of justice."

The Commission may be required by mandamus to discharge their duty and to hear the matter.

In Higgins v. Brown, 20 Okla. 355, 94 P. 703, this court held in the 3rd syllabus as follows:

"A writ of mandamus is subject to the legal and equitable discretion of the court, and it ought not to be issued in cases of doubtful right. But it is the only adequate mode of relief where an inferior tribunal refuses to act upon the subject brought properly before it."

In State ex rel. Collins v. Parks, 34 Okla. 335, 126 P. 242, at page 338 of the official Report, this court said:

"The writ of mandamus cannot be used

to control judicial discretion; but it can be used to compel a tribunal to act. It cannot be used to compel a particular judgment; but it can be used to require a court to exercise its jurisdiction."

In State ex rel. Wigal v. Wilson, 43 Okla. 112, 141 P. 426, on page 117 of the official Report, it was said:

"While a writ of mandamus will not, as a general rule, issue to review an exercise of judicial discretion, it may be employed to compel an inferior tribunal to act or to exercise its discretion, although the particular method of acting or the manner in which the discretion shall be exercised will not be controlled."

In Greenboots Construction Co. v. State Highway Commission et al., 165 Okla. 288, 25 P. (2d) 783, this court held in the syllabus, paragraph 4, as follows:

"Although ordinarily mandamus will not lie to compel the performance of the duty of an officer when such discharge of the duty requires an exercise of official judgment and discretion, and the particular duty is not a purely ministerial duty, yet the writ may be issued to correct an abuse of discretion or to compel action where the action taken or the refusal to act is arbitrary, even though the officer is vested with judgment and discretion in the performance of the specific duty."

In Board of County Com'rs of Seminole County v. State ex rel. Cobb, 31 Okla. 196, 120 P. 913, this court held in the syllabus, paragraph 1, as follows:

"Where there has been an exercise in good faith of judgment or discretion by an officer upon whom a duty involving discretion is imposed, the writ of mandamus will not lie to compel him to act again; but, if by a mistaken view of the law or by an arbitrary exercise of his authority there has been in fact no actual exercise in good faith of the judgment or discretion vested in the officer, the writ will lie to compel such officer to act within the limits of the law."

In Norris v. Cross, 25 Okla. 287, 105 P. 1000, this court held in the syllabus, paragraph 6, as follows:

"A writ of mandamus may issue to require an executive officer to act and decide even though his act and decision involve an exercise of his judgment and discretion, but it may not direct in what particular way he shall act or decide."

The writ of mandamus is granted and the Corporation Commission is directed to accord plaintiff a hearing on his application for adjusted potentials and back allowances of production, and to make and enter such order granting plaintiff the relief, if any, to which the plaintiff is entitled, or denying relief if after such hearing and consideration thereof, there has resulted no discrimination against the plaintiff, or if no right is shown to any relief.

RILEY, C. J., and SWINDALL, McNEILL, BUSBY, and BAYLESS, JJ., concur. CULLISON, V. C. J., and ANDREWS and OSBORN, JJ., absent.