CABOT CARBON COMPANY and The Texas Company, Plaintiffs in Error,

v.

PHILLIPS PETROLEUM COMPANY, The Corporation Commission of the State of Oklahoma, and the State of Oklahoma, Defendants in Error.

No. 36639.

Supreme Court of Oklahoma.

June 28, 1955.

As Amended Sept. 13, 1955.

Rehearings Denied Sept. 13, 1955.

676

Rainey, Flynn, Green & Anderson, Oklahoma City, and Homer D. Johnson, Pampa, Tex., Fred C. Fernald, Boston, Mass., of counsel, for plaintiff in error, Cabot Carbon Co.

Yates A. Land, William E. Lester, Tulsa, and Fisher Ames, Oklahoma City, Ames, Daugherty, Bynum & Black, Oklahoma City, of counsel, for plaintiff in error, The Texas Co.

Rayburn L. Foster, Harry D. Turner, R. M. Williams, and Kenneth Heady, Bartlesville, and Cecil C. Hamilton, Oklahoma City, for defendant in error, Phillips Petroleum Co.

Floyd Green, and Ferrill Rogers, Oklahoma City, for defendant in error, Corp. Comm. of Oklahoma.

Vincent Dale, Guymon, for amicus curiæ, The Texas County Land and Royalty Assn.

BLACKBIRD, Justice.

This appeal presents one controversy in the body of litigation that has proceeded through various courts, as well as this State's Corporation Commission since the latter, in 1946, entered its first Order (No. 19514)· fixing the price of natural gas in the Guymon-Hugoton Field, and it was determined on appeal to this Court and to the U. S. Supreme Court, Cities Service Gas Co. v. Peerless Oil & Gas Co., 203 Okl. 35, 220 P.2d 279, Id., 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190; Phillips Petroleum Co. v. State of Okla., 340 U.S. 190, 71 S.Ct. 221, 95 L.Ed. 204, that said tribunal (hereinafter referred to merely as the "Commission"), could, in connection with its power to regulate the taking of such gas from its natural reservoir, fix the price at which it was so taken. In the years that have elapsed since the Commission, by said order, first set a minimum price of 7¢ per thousand cubic feet (MCF) at the well-head for such gas from said field, and, by a subsequent order (No. 26096) entered July 29, 1952, increased said minimum price to 9.8262¢, and extended said increased price to all gas (including so-called "residue" gas) sold "off the lease or drilling unit * * *" where it left said reservoir, various companies, both purchasers and sellers of gas from said field, have attempted either to bring the gas with which they were dealing under the operation of said orders, or to avoid them, depending, of course, upon whether the determination they sought would be advantageous in relieving them from compliance with contracts previously entered into, specifying a lower price for the gas. Generally, those bound by such contracts to sell have steadfastly maintained that the Commission's orders for the higher price were valid and applied to their situation, while those bound by such contracts to buy, just as steadfastly maintained that the orders did not apply to the gas dealt with in their situation, and/or, that the orders were invalid and unconstitutional. See State of Wisconsin v. Federal Power Comm., 92 U.S.App.D.C. 284, 205 F.2d 706; Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035; Natural Gas Pipe Line Co. of America v. Panoma Corp., Okl., 271 P.2d 354, Id., 349 U.S. 44, 75 S.Ct. 576; Natural Gas Pipe Line Co. of America v. Corporation Commission, Okl., 272 P.2d 425; Id., 349 U.S. 44, 10 Cir., 75 S.Ct. 578; Cabot Carbon Co. v. Phillips Pet. Co., D.C., 114 F. Supp. 953; Phillips Petroleum Co. v. Cabot Carbon Co., 10 Cir., 210 F.2d 841, Id., 348 U.S. 867, 75 S.Ct. 105; Panoma Corp. v. Texas Co., Okl., 284 P.2d 716.

This appeal concerns another controversy over whether said gas taken from the Guymon-Hugoton Field shall be paid for at the price specified in the parties' contract, or the price fixed by the Commission. It is similar to Panoma Corporation v. Texas Co., supra, and the background facts of the controversy between the de-

fendant in error and the plaintiff in error, Cabot Carbon Company are the identical ones stated in the Federal Court opinions in Cabot Carbon Company v. Phillips Pet. Co., supra, up to and including the U. S. Circuit Court's opinion of April 12, 1954, holding that the gas prices of 7¢ and 9.8262¢ per MCF, fixed by the Commission's aforesaid orders (No. 19514 and 26096, supra) superseded the price specified in the contract between said parties, and affirming the U. S. District Court's judgment in favor of Cabot for the difference between the two multiplied by the number of cubic feet Phillips had produced under its contract with Cabot, or the sum of $387,282.37, with interest and other charges.

After rehearing had been denied in that case, Phillips Petroleum Company (hereinafter referred to, like the other parties to this action, by the first word in its name) instituted the present proceedings as the Commission's Cause CD No. 5748, by filing its "Application" for an order "clarifying" its previous orders No. 19514 and 26096, supra, "and for an order in respect to overriding royalty payments" in the aforesaid field "which by contract are payable by applicant or other producers similarly situated, at a fixed rate not dependent on the market value or proceeds of the gas produced." After due notice and a hearing on said application, at which both Texas and Cabot Carbon Company appeared, the Commission entered its Order No. 28884, for the review of which the latter parties perfected this appeal. Said order decreed:

"3. That no producer in the Guymon-Hugoton Field shall be required by reason of either said Order No. 19514 or Order No. 26096 to pay to the owners of any royalty, overriding royalty or other interests in the gas any sum in excess of that required to be paid by the terms of their contract."

and that:

"* * * Order No. 19514 * * and Order No. 26096 * * * be interpreted and applied in accordance with the purpose and intent ascribed thereto in finding No. 5 * * *"

which said finding was as follows:

"5. Said Order No. 19514 and Order No. 26096 were intended and are to be interpreted and applied as a regulation of the production of gas from the Guymon-Hugoton Field by and to the extent of requiring that a producer, who has the right to operate wells or to take or to market the gas therefrom, receive or realize for the gas so produced a sum equivalent to the prescribed minimum price. In entering said orders the Commission contemplated and intended that the landowners, usual and typical royalty owners, and other persons whose royalty, overriding royalty or other interest in the gas is by contract measured by or dependent upon the market value or proceeds of sale thereof by the producer would under and as a consequence of the terms of their contracts be entitled to payment based upon the minimum price the producer is so required to realize. It was not the intent of the Commission nor the purpose of said orders to modify or effect in any way the contractual basis or rate of royalty or overriding royalty, or other payments required to be paid by such producer or to require that such producer pay the owner of any such royalty, overriding royalty or other interest in the gas a sum in excess of that required to be paid by the contract. The Commission does not consider that it has such authority. To require such producer to pay to the owner of a royalty, overriding royalty or other interest in the gas a sum in excess of that required to be paid by their contract would in no way prevent or tend to prevent either physical or economic waste of natural gas, protect or tend to protect the correlative rights of any person or persons owning any interest in the Guymon-Hugoton Field or in any way protect the interest of the public."

After the above quoted Order was entered, the U. S. Supreme Court granted Phillips' application for a writ of certiorari to the U. S. Circuit Court in Phillips Petroleum Co. v. Cabot Carbon Co., supra, vacating that court's judgment and remanding the case to said court "for its reconsideration in the light of the latest order of the Corporation Commission of Oklahoma pertaining to the order in question." 75 S.Ct. 105, supra. It therefore appears that there is now in effect no United States or Federal Court decision purporting to decide the controversy between any of the parties to this action.

■ We think the matter is largely controlled, however, by what we recently said in Panoma Corporation v. The Texas Co., supra, cited by Phillips. In answer to this citation neither Texas nor Cabot cites any provision or provisions in their contracts with Phillips which, in our opinion, is sufficient to distinguish this case, on any material issue, from that case. We have carefully examined the Texas-Phillips contract as well as the Cabot-Phillips contract (whose material provisions are quoted in the Federal citations, supra) and find that, though they differ in some particulars, they both purport to reserve gas to Texas and Cabot, respectively, under the leases said companies have assigned to Phillips, and seem to contemplate that Texas and Cabot retain title and/or ownership of their share until it is produced, or taken out of the ground, or brought to the surface, at the well-head, at which time and place title passes to all except that part referred to in the contracts as "overriding royalty", being one-fourth of the seven-eighths part of the production (which, latter, under ordinary oil and gas lease provisions, like those in the leases that have been assigned to Phillips in the present case, belong to the lessee or owner of the "working interest"). The most important feature of both contracts, as far as concerns the constitutional limitations of the police power the Corporation Commission is authorized to exercise for the State, is that *only* Phillips has the right to produce (or take the gas from the underground structure, reducing it to possession) and market the gas. Since the Corporation Commission's power to fix the price of gas taken from its natural reservoir is dependent upon, and can be exercised only in connection with, its power to regulate such taking (as indicated in the Panoma Corporation-Texas Co., case, supra, and the dissenting opinion in the Natural Gas Pipe Line Co.-Corporation Commission Case, supra) that power can be constitutional, and effectively, and forcibly, exercised against the taker or party who is in charge of taking gas from its natural reservoir, transforming it from a natural resource of the State (in which the public has a very real interest and concern) to private property and marketing it as such. The Commission's jurisdiction in a situation like the present one, was very lucidly discussed in detail by the learned dissenting judge in Phillips Petroleum Co. v. Cabot Carbon Co., supra, 210 F.2d 845–847, incl., and we adopt his views as our own herein, without further discussion. Not only is Phillips the "taker" or "producer" under its contract with Cabot, but it occupies the same position with Texas, for in its contract with the latter there is a provision which, after specifying that the *casinghead* gas (with its contents and by-products) produced from the leases involved shall belong to Texas, further states:

"All gas which is produced from the oil and gas leases covered hereby, or extensions and renewals thereof, together with all contents and by-products thereof, shall belong to and be the sole property of Phillips."

("Casing-head gas" denotes a different product from that ordinarily referred to in this type of contract merely as "gas." As pointed out in the foot note to Phillips Petroleum Co. v. State of Wisconsin, supra, at page 804 of 74 S.Ct., it is "produced with oil and furnishes the pressure under which the latter is brought to the surface.") When it is recognized that the power of the State and its instrumentality, the Corporation Comission, extends only to the taking from the natural reservoir (which diminishes the State's natural resources reserves) it is readily understood that the expression "correlative rights" or that agen-

cy's power to protect them, also extends only that far. In other words, the Commission can protect the individual owner to the extent of seeing that he gets the share of the common reservoir's produce to which he is entitled by his grant, contract or conveyance. It can see that he has a co-equal opportunity with all other owners to reduce his share to possession, but, as we pointed out in the Panoma Co. v. Texas Co., Case, supra, this does not mean that his share will be equal to that of other owners having a co-equal *right to participate* in the common reservoir, or that he will get the same price for his share that the others obtain. The price per unit he obtains for his share of the product, like his interest, or the quantum of his share in said production, may be limited, restricted or fixed by private contract; and the so-called "overriding royalty" contracts involved herein are agreements of that character. The Corporation Commission's power to regulate the taking from the reservoir to prevent waste and protect correlative rights, even to the extent of fixing the price of produce so taken, if necessary to accomplish these conservation purposes, does not extend to overturning private contracts where not necessary for such accomplishment. Again, as we pointed out in the Panoma-Texas Co., case, supra, the only extent to which the Commission's price-fixing power has yet been justified in any of the afore-cited price-fixing cases is to see that all gas produced and marketed from the Guymon-Hugoton reservoir brings a uniform minimum price. This is, and can be, accomplished under the Orders now in effect, by requiring Phillips, like others who produce and market gas in the field, to obtain the minimum price for it. Under these Orders each one thousand cubic feet of gas that leaves the Guymon-Hugoton reservoir will bring the minimum price fixed by the Commission regardless of what price these producers may have already paid, or may pay in the future, for the right to produce such gas under similar contracts, which, as pointed out in the Panoma-Texas Company case, differ materially from ordinary leases, and place Cabot and Texas in a separate and distinct category from the ordinary royalty owner under such leases.

We think the above sufficiently demonstrates the unsoundness of Texas' and Cabot's position which is based almost entirely upon *their* interpretation of previous Court and Commission expressions as to the rights and "correlative rights" of "owners" generally; and upon arguments Phillips has made in some of the cases cited supra.

■ It also demonstrates that if the Commission had interpreted its previous orders No. 19514 and 26096, other than it has done by the Order herein appealed from (No. 28884) such interpretation would very likely have been invalid and unconstitutional, especially in the absence of convincing proof of necessity to conservation of extending its price-fixing power further than fixing the price at which the producer markets the gas he takes, or separates, from that part of the State's natural gas reserves lying under the Guymon-Hugoton Field. On this point the Order cannot be said to be contrary to the evidence or to be without sufficient evidence to support it.

■ Nor can the Commission's power to clarify its previous orders be doubted under the specific wording of Tit. 52 O.S.1951 § 112. This power, as has been done in this case, can be exercised without invading the exclusive province of the Courts. The argument advanced and the cases cited by Texas and Cabot, like Application of Little Nick Oil Co., 208 Okl. 695, 258 P.2d 1184, and Texola Drilling Co. v. Okla. Corp. Comm., Okl., 281 P.2d 405, in attempting to demonstrate the absence of such power, are inapplicable. Most of such argument is based upon the false premise that Order No. 28884 *changed* the previous orders and took from said parties rights that had "vested" in them under the previous orders, which latter basic claim is fabricated upon their own misinterpretation of the language of said orders, and some very general and abstract expressions in the opinions and orders referred to above.

In accord with the above views, Order No. 28884 is hereby affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, HALLEY and JACKSON, JJ., concur.