**FARMERS' UNION CO–OPERATIVE ROYALTY COMPANY, a corporation, Appellant,**

v.

**Claire B. WOODWARD et al., Appellees.**

**No. 44622.**

Supreme Court of Oklahoma.

Oct. 30, 1973.

Rehearing Denied Nov. 27, 1973.

---

Tomerlin & High, Oklahoma City, for appellant.

Jack L. Rorschach, Vinita, Harold E. Rorschach, Tulsa, for appellee-Woodward; Ragan, Russell & Rorschach, Houston, Tex., of counsel.

Hayden E. Weaver, Tulsa, for appellees-Oxley and Amax.

SIMMS, Justice:

This action was instituted in the District Court of Latimer County by Farmers Union Royalty Company against Claire B. Woodward, et al, to quiet title to a ¾ mineral interest in a 40 acre tract in Latimer County. Judgment was entered for defendant and plaintiff appeals.

The chain of title shows that in 1932, Weaver was the owner in fee of the Latimer County property described as the NW ¼, NW ¼, Sec. 4, Twn. 6, R 18 E, also described as Lot 4, the subject of this suit.

During 1932, Weaver sold, by Warranty Deed, ¾ mineral interest in the property to the plaintiff.

In 1937, by subsequent conveyances, Benight became the valid title holder to the surface of Lot 4.

On June 4, 1941, the Latimer County Treasurer mistakenly included Lot 4 in a resale tax deed of adjoining property bought by J. R. Hughes. A month later, Benight, unaware that the property had been sold to Hughes, executed a Warranty Deed to Woodward, conveying the surface of Lot 4. When the parties became aware that the tax deed included Lot 4, Hughes conveyed the property to Benight by quit claim deed, dated March 11, 1943. Benight, on April 9, 1949, conveyed the property by quit claim deed to Woodward.

Woodward contends that it is by virtue of this deed that he received title to the mineral interest claimed by plaintiff.

In an effort to insure the title claimed by Woodward, he instituted a quiet title suit on April 27, 1949, in Latimer County, naming Farmers Union, among others, as a defendant in the case. On June 22, 1949, a quiet title decree in favor of Woodward was issued by the District Court of Latimer County reflecting default and non-appearance by Farmers Union. Plaintiff alleges his first cause of action arises out of this judgment.

Plaintiff claims this judgment is void because: (1) The quiet title petition failed to state a cause of action against Farmers Union; (2) There was no personal service on Farmers Union and the purported service by publication is void. Farmers Union, therefore, asserts that because this judgment is void, they, not Woodward, are the rightful owners of the claimed mineral interest.

In 1965, Woodward executed an oil and gas lease in favor of one Chastain, who

later conveyed by mesne Assignments to defendants Amax Petroleum Company and John Oxley. From June 3, 1966 to July 8, 1966, defendant Skelly Oil Company drilled a gas well on Lot 4 pursuant to agreement with Amax and Oxley. Defendant Ark-La Gas Company is buying gas from the well. Therefore, for its second cause of action, plaintiff seeks an injunction against the payment of any monies derived from the sale of gas attributable to plaintiff's ¾ interest.

■ Title 12 O.S.1971, § 1038, provides: "A *void* judgment may be vacated at any time, on motion of a party, or any person affected thereby." (E.A.) The 1949 quiet title decree was based upon a default judgment. Fundamentally, there are two primary reasons why a default judgment must be set aside. The court had no jurisdiction, first, over the person of the defendant; or, second, the subject matter of the action. Since service was by publication in the 1949 case, our primary concern is with lack of jurisdiction over the person.

■ Because this is a collateral attack on a decree, the Court's inquiry may not extend beyond the judgment roll in the 1949 action. Collingsworth et al. v. Hutchinson, 185 Okl. 101, 90 P.2d 416, 418 (1939). Thus, unless the judgment roll affirmatively discloses lack of jurisdiction, the judgment is not void on its face.

I

■ The affidavit for publication is necessarily the first instrument in the judgment roll that must be considered. 12 O.S.1971, §§ 170, 171, authorizes service by publication.

In Magnolia Petroleum Co. v. Young, Okl., 264 P.2d 757 (1953), the syllabi reads:

"1. Where the affidavit for service on a foreign corporation by publication does not allege that such corporation has failed to comply with the requirements to do business in the State of Oklahoma, including the designation of an agent upon whom service may be had, and where the judgment roll does not nega-

tive the doing of business within this State by said corporate defendant, a judgment rendered thereon without further notice upon or any appearance by such corporation is void.

.2. Where a defect fatal to the court's jurisdiction is reflected in the judgment roll, the judgment is void on its face and may be set aside at any time upon either direct or collateral attack."

Although *Magnolia* concerned the allegations necessary in an affidavit to obtain publication service on a foreign corporation, the principles set forth are equally applicable to domestic corporations.

■ Title 18, O.S.1947 Supp., § 1.17, provides that domestic corporations, as a condition to doing business in Oklahoma, must appoint and file with the Secretary of State their designated service agent and his registered office. Accordingly, the plaintiff in the 1949 suit was charged with knowledge that Farmers Union was required by law to file its designation of service agent. Unless negated in the affidavit, or the judgment roll, it is presumed that an agent existed. Plaintiff's bare recital of due diligence in his affidavit is inadequate to support an inference that the corporation had no registered service agent. In *Magnolia, supra,* the affidavit, similar to the affidavit in the instant case, stated:

"That plaintiff with due diligence . . . is unable to obtain service of summons upon any of . . . defendants in this action within the State of Oklahoma."

Under the authority of *Magnolia, supra,* this was not sufficient language to support a finding that no agent existed with the state.

■ The fact that the affiant in *Magnolia, supra,* stated that he believed the defendant corporation was an existing corporation, and that the affiant in the 1949 case stated he did not know whether the corporation was existing or dissolved is of no moment. Where the judgment roll contains facts sufficient to lead one to believe the defendant is an existing corporation,

there must be something to affirmatively show that the defendant did not comply with the requirements for doing business in Oklahoma.

The pertinent portion of 12 O.S.1971, § 171, requires:

\* \* \* \* \* \*

"In actions against \* \* \* a corporation or its unknown successors, trustees and assigns, the affidavit for service by publication, or verified petition or pleading, *shall* state that the plaintiff, affiant or attorney, as the case may be, *does not know and with due diligence* \* \* \* *is unable to ascertain whether a corporation named in the alternative is legally existing or dissolved, and, if not in existence, is unable to ascertain the names or whereabouts of its officers, successors, trustees, or assigns, if any.* \* \* \*" (E.A.)

The relevant portion of the affidavit for publication service in the 1949 quiet title suit is:

"That with due diligence affiant has been unable to ascertain whether or not . . . Farmers Union Co-operative Royalty Company, a corporation, are existing or not existing, or dissolved, and that if they are existing he has been unable to ascertain the principal place of business of said corporation and if not existing or dissolved he has been unable with due diligence to ascertain the unknown successors, trustees and assigns of any of the above named corporations."

■ It can be readily seen that the affidavit does not comply to the letter with the statute in that the affiant fails to state that he is unable to ascertain the names or whereabouts of the defendant's officers. This Court looks to the substance of the affidavit and minor defects are cured by a recital in the decree that the court has examined and approves the publication. Hammer v. Baldwin, 203 Okl. 680, 225 P. 2d 801 (1950). But an inspection of the decree in the 1949 quiet title case fails to disclose that the court approved the publication.

■ The requirements for the affidavit for publication service set forth in § 171, supra, minimally comply with due process requirements. Language significantly varying from the statute may not. For this reason, and for the further reason that the language in the statute is mandatory, the statute must be strictly complied with. Faulkner v. Kirkes, Okl., 276 P.2d 264 (1954).

Woodward claims that at the time of the quiet title suit in 1949, Farmers Union was not a validly existing corporation, nor was there any valid designation of Farmers Union's registered agent with the Secretary of State.

Farmers Union original "Articles of Incorporation" were signed by the incorporators on November 7, 1928, and filed with the Secretary of State on November 13, 1928. The duration of the corporation was indicated as 20 years. On November 12, 1948, Farmers Union filed with the Secretary of State its "Amended Articles of Incorporation (Domestic)," extending its original Articles of Incorporation. The pertinent portion of the amended articles are:

"ARTICLE TWO

"A. As filed

The address of its Registered office in the State of Oklahoma is: <u>18 N. Klein St., Oklahoma City, Oklahoma, County of Oklahoma</u>, and the name and address of its registered agent is: <u>Walter D. Housh, 18 N. Klein St., Oklahoma City, Oklahoma.</u>

B. Amended

The address of its Registered office in the State of Oklahoma is: _____, County of _____, and the name and address of its Registered agent is: _____."

On November 13, 1928, the Secretary of State issued a certificate of incorporation to Farmers Union Cooperative Royalty Company. Defendant maintains that his publication is valid since: (1) Farmers Union came into existence on November 7, 1928, and terminated by its own terms on November 7, 1948; (2) The Amended Articles of Incorporation were insufficient to revive the corporate existence; (3) The Amended Articles of Incorporation failed to provide for appointment of a registered agent. None of these contentions have merit.

In 1928, 18 O.S. § 20, and § 423 provided that a corporation became a legal corporate body upon filing its articles of incorporation and receiving from the Secretary of State his certificate.

Title 18, O.S. § 1.14 in effect in 1948, provides:

"Such corporation may extend the time of its existence . . . by amending its articles of incorporation as provided in this Act".

Title 18, O.S. § 1.151, in effect in 1948, provides:

"Any domestic corporation may amend its articles of incorporation in any manner so as to include or omit any provision which would be lawful to be included in or omitted from the original articles of incorporation if they were being executed and filed at the time the amendment is made."

Since it would have been unlawful to amend the articles to omit the registered office or agent (S.L.1947, P. 90, Sec. 16–17) the amended articles are held to have maintained the registered office or agent named as having been filed in the original articles. Moreover, the intent by Farmers Union to retain the service agent and registered office named in the original articles as Walter D. Housh is reinforced by the fact that Housh is named on the first line of the amended articles as one of the persons executing the amendment. Further, his address remains at 18 N. Klein Street.

We can only conclude that if Woodward had made the effort in 1949 to serve Farmers Union that is required by due process, there would have been no question but that he would have found that the Secretary of State had on file the means for personal service on Farmers Union. See the rationale of Bomford v. Socony Mobil Oil Co., Okl., 440 P.2d 713 (1968).

Neither is there merit in defendant's attack on the authority of Farmers Union to act in a corporate capacity. The well established rule in this state is that where proof is made of formal filing of articles and issuance of charter, showing continued corporate existence on its face, only the state can go behind the record by direct action and question the validity of the corporation's existence. 18 O.S.1971, § 1.14(c).

## II

The second allegation of error goes to the sufficiency of the allegations of the 1949 petition. Since we have determined the 1949 decree to be void, it is unnecessary to pass upon this issue.

## III

The third issue is raised by Woodward's claim that it deraigns its title to the mineral interest from a 1943 quit claim deed, which is based on the invalid resale tax deed given to Hughes by the Latimer County Treasurer.

Farmers claims Woodward's title to the property is properly deraigned from a 1941 Warranty Deed from Benight which operated to convey only the surface interest.

The 1943 quit claim deed from Hughes to Benight recited:

"This deed is given to correct error in selling the above described property in 1941 resale as tax was paid and not subject to resale."

In 1949, Benight gave a quit claim deed to Woodward. Woodward, in the 1949 petition alleges he gained title to the mineral

interest by virtue of this quit claim deed, coupled with continuous possession of the property for more than five years.

The question is whether the quit claim deed, coupled with possession for five years operated to convey the mineral estate in the property to Woodward. (Woodward owned the surface interest in the property by virtue of the warranty deed he received from Benight in 1941. Plaintiff admits Woodward owns the surface.)

The erroneous tax deed merely constituted a cloud on Woodward's title. That cloud was removed by the quit claim deed from Hughes to Benight to Woodward. It is unreasonable for Woodward to assert that he obtained his title to the property from a void resale tax deed rather than a valid warranty deed with an easily removable cloud. In Douglass v. Mounce, Okl., 303 P.2d 430 (1956), we stated in Syllabus 2:

"A person not in possession of property to which he has purchased a void county deed who thereafter becomes the owner of the property by purchase from the record owner is presumed to take possession by virtue of his true title, and not adversely to an outstanding mineral estate."

By giving the quit claim deed to Benight, Hughes gave all his interest in Tract 4 to Benight. Hughes interest, however, consisted of nothing and the quit claim so stated. Hughes had never gone into possession of the tract and never pretended he owned any interest in the tract.

The defendant cites Jenkins v. Frederick, 208 Okl. 583, 257 P.2d 1058 (1952), and, Secrest v. Williams, 185 Okl. 449, 94 P.2d 252 (1939), and 12 O.S.1971, § 93. The statute states:

"Actions for the recovery of real property . . . can only be brought within the periods hereinafter prescribed . . .

An action for the recovery of real property sold for taxes, within five (5) years after the date of the recording of the tax deed. * * * (6) Numbered paragraphs 1, 2, and 3 shall be fully operative regardless of whether the deed or judgment or the precedent action or proceeding upon which such deed or judgment is based is void or voidable . . . ."

Jenkins v. Frederick, *supra*, interpreted this statute to apply to the doctrine of adverse possession to bar the owner of previously severed mineral rights from asserting her rights against a party who had been in adverse possession for more than five years:

"An action or defense against a resale tax deed, which is void on the face of the tax sale proceedings, is barred from prosecution, if there has been a lapse of time, following is recordation, *accompanied with possession of the real property by the holder of the resale tax deed,* for the period prescribed by statute as sufficient to bar an action for the recovery". (E.A.)

The significant difference between the Jenkins case and the case at bar is that in the Jenkins case the holder of the resale tax deed had been in possession for more than five years and was attempting to assert his rights under the resale tax deed. In the instant case, the only person who ever held the resale tax deed was Hughes. Nor were Benight and Woodward successors in interest to Hughes' interest in the resale tax deed. Hughes, by the quit claim deed, disavowed that he had any interest in the resale tax deed.

In the earlier case of Secrest v. Williams, *supra,* this Court held that since severed minerals are part of the realty for ad valorem tax purposes, a *valid* resale vests the minerals in the purchaser at the sale. Of course, there was no *valid* resale in the instant case. In fact, the property in question was never sold at a tax sale. The tax deed was merely a spurious instrument and the quit claim deed so stated.

Therefore, the tax resale period of limitations is inapplicable in the instant case. The rule that should be applied is the same rule applied in other cases involv-

ing title to a severed mineral interest where adverse possession is claimed. We stated that rule in Deruy v. Noah, 199 Okl. 230, 185 P.2d 189, 191 (1947):

"* * * 'Where there has been a severance of the legal interest in the minerals from the ownership of the land, adverse possession of the surface is not adverse possession of the mineral estate, even though title to the minerals be asserted all the time.' and:

'Where ownership of the surface and of the mineral rights has been severed, the only way the Statute of Limitations can be asserted against the owner of the mineral rights or estate is for the owner of the surface estate or some other person to take actual possession of the minerals by opening and operating mines for the statutory period.' "

Judgment of the trial court Reversed and Remanded with Directions to enter judgment quieting Farmers' title to its undivided ¾ interest in the minerals under the land in controversy; and, Granting Injunctive Relief to Plaintiff as prayed for in their petition.

All the Justices concur.