Carl A. NILSEN, Appellant,

v.

PORTS OF CALL OIL COMPANY, a corporation, Appellee.

Taft MILFORD, Petitioner,

v.

Hamp BAKER, Chairman; Norma Eagleton, Member; and Bill Dawson, Member; all Commissioners of the Corporation Commission of the State of Oklahoma, Respondents.

Nos. 57886, 57716.

Supreme Court of Oklahoma.

Dec. 17, 1985.

Mahaffey, Gore & Brickell by Gregory L. Mahaffey and Richard J. Gore, Oklahoma City, for appellant Carl A. Nilsen.

Charles Nesbitt, Oklahoma City, for appellee Ports of Call Oil Co.

Bay, Hamilton, Lees, Spears & Verity by G.L. Jidge Verity, Oklahoma City, for petitioner Taft Milford.

Alice S. Mitchell, Conservation Atty., and Gretchen Hoover, Asst. Conservation Atty., Oklahoma City, for respondent Corp. Comn.

Richard K. Goodwin & Associates by Richard K. Goodwin, Oklahoma City, for respondents Doyle Snow, Emil Larson and Sitco, Inc.

McAfee & Taft by Judson S. Woodruff and Joseph H. Bocock, Oklahoma City, for amicus curiae Cap Corp.

LAVENDER, Justice:

On March 18, 1980, the Corporation Commission entered Order No. 165975, on application of Ports of Call Oil Co., pooling the various common sources of supply within

the 640 acre drilling and spacing unit comprised of Section 14, Township 10 N., Range 13 W., Caddo County, Oklahoma. Under this order the applicant, Ports of Call, was directed to begin the drilling of the unit well within 180 days of the date of the order. In the event this provision was not complied with, the order, by its own terms, would become null and void. Order No. 165975 also contained provisions under which those holding working interests in the unit could elect to participate in the unit well or receive compensation for their working interests.

Ports of Call commenced a well on Section 14, referred to as the Tomcat # 14–1, within the 180 days allowed by the Commission order. The Tomcat # 14–1, borehole was subsequently lost after a series of blowouts caused by very high pressure gas deposits encountered in Ports of Call's drilling operations. The initial borehole was plugged and a second borehole commenced. This borehole was also lost after sustaining damage caused by blowouts. Ports of Call then initiated the drilling of a third borehole. All parties agree that the second and third holes were initiated after the expiration of the 180 days provided in Order No. 165975.

At this point it appears that various parties who had elected not to participate in the initial well began to challenge Ports of Call's right to proceed in the drilling of the subsequent boreholes, as they had been commenced after expiration of the time provided by the initial pooling order. The first attack was presented in the form of an application for pooling order covering Section 14 filed with the Commission by Helmerich & Payne, Inc.[1]

Next, Ports of Call filed an application for clarification of Order No. 165975 and subsequently moved that this application be consolidated with Helmerich & Payne's request for a pooling order.

The second attack on Ports of Call's continuing operations in Section 14 was commenced in the District Court of Caddo County. In this suit, Carl A. Nilsen sought to quiet title to various mineral leases within the NW/4 of Section 14 which Nilsen had acquired on June 5, 1981.

Several months later, Taft Milford, another holder of mineral interests in Section 14, filed an application for assumption of original jurisdiction and petition for writ of prohibition and motion for immediate stay in this Court, seeking to block the Commission's consideration of Ports of Call's application for clarification of Order No. 165975. This matter was designated cause No. 57,-716. As the question of the Commission's jurisdiction to entertain Ports of Call's application had been raised in the Commission but not yet ruled on, this Court declined to issue an order staying the proceedings.

The Commission heard argument on the question of jurisdiction. Subsequently, the Commission entered Order No. 203625. In this order the Commission found that it did have jurisdiction of the subject matter of Ports of Calls' application under the power to repeal, amend, modify or supplement Commission orders granted by the Legislature in 52 O.S. 1981 § 112. However, the Commission ruled that it did not have jurisdiction to determine whether Ports of Call's operations in Section 14 had constituted a continuous drilling operation. The Commission stated that this was a matter to be decided by the district court in the pending quiet title action.

Two days after the entry of Order No. 203625, Ports of Call filed a supplemental pleading in cause No. 57,716, requesting the issuance of a writ of mandamus directing the Commission to address the issues raised in its initial application.

Two days following the Commission hearing on Ports of Call's application, the District Court of Caddo County heard arguments on demurrers which had been presented by Ports of Call to Nilsen's action on the ground that the district court lacked jurisdiction to entertain a collateral attack on a Commission order. Two weeks later the district court sustained Ports of Call's demurrers, citing *Woods Petroleum*

---

1. Helmerich & Payne, Inc., subsequently dismissed its application.

*Corp. v. Sledge*,[2] as determining that the court lacked jurisdiction over the matter. Nilsen, in cause No. 57,886, appealed this order of the district court, which had dismissed his action without leave to refile.

This Court, by subsequent order, consolidated causes 57,716 and 57,886 for consideration, and has also stayed the Commission from hearing an application for an order vacating Order No. 165975.[3] The question which the parties to this matter seek to have resolved is whether Ports of Call's operations in Section 14 constitute a continuous drilling operation under the pooling order issued by the Commission. The problem here lies in finding a forum to make this determination. Both the Commission and the district court have declined to assume jurisdiction regarding this question.

■ In ruling on Ports of Call's special demurrer to its jurisdiction, the district court relied on the case of *Woods Petroleum Corp. v. Sledge*.[4] In *Woods* this Court addressed a case in which a unit operator, unhappy with the result it had obtained in the Commission regarding the rights of other interest owners in the unit to participate in increased density wells, had attempted to attack that result through the vehicle of a quiet title action in district court. We stated that the operator's proper remedy would have been to appeal the Commission order allowing participation in the increased density wells. We then found that the blatant attempt to circum-

vent the result of the Commission's rulings constituted a prohibited collateral attack[5] upon those rulings, and thus, that the question posed to the district court was beyond its authority to entertain. In such cases the court's authority extends only to the question of whether the order under attack is void.[6]

■ *Woods* does not imply that the district court lacked jurisdiction to proceed in a quiet title action merely because such an action would call for determination of the legal effect of a Commission order.[7] The district court clearly has jurisdiction to adjudicate the legal effect (as distinguished from the continuing effectiveness) of a Commission order or of an order of a court of competent jurisdiction upon title to land.[8] What the district court may not do is entertain a collateral attack upon such an order under the guise of an action to quiet title, as was the case in *Woods*.

The question for which the parties to this matter seek resolution, however, may not be categorized as a simple determination of the effect of a final order upon the title to the mineral interests involved. The question sought to be presented is whether Ports of Call's operations had been in compliance with Order No. 165975, or, if they had not, whether the Order had ceased, by its own terms, to be of force and effect.

The parties arguing in support of the request for a writ of prohibition to preclude the Commission from answering this question cite the case of *Southern Union Pro-*

2. 632 P.2d 393 (Okla.1981).

3. Filed by Emil Larson, Doyle Snow and Sitco, Inc., aligned in this cause as respondents.

4. Supra, note 2.

5. A collateral attack is an attempt to avoid, defeat, evade, or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial. *Woods Petro. Corp. v. Sledge*, 632 P.2d at 396.

6. This result is consistent with the general rule under Oklahoma law holding that, in a collateral attack on a judgment, the court's inquiry may not extend beyond a determination of

whether the assailed judgment is void on the face of the judgment roll. See *Farmers' Union Co-op Royalty Co. v. Woodward*, 515 P.2d 1381 (Okla.1973).

7. In the case of *Shell Oil Co. v. Keen*, 355 P.2d 997, 1000 (Okla.1960), we recognized the authority of the district court to proceed in an action based upon Commission orders. And, in *Stipe v. Theus*, 603 P.2d 347 (Okla.1979), we recognized the district court's jurisdiction to determine reasonable costs of development under a Commission pooling order.

8. See *State ex rel. Commissioners of the Land Office v. Lewis*, 197 Okl. 288, 170 P.2d 237 (1946). And see also *Riddle v. Jay*, 356 P.2d 1074 (Okla.1960).

*duction Company v. Corporation Commission,*[9] as supporting their position. They argue that *Southern Union* stands for the proposition that the Commission may not determine the effect of actions by parties to a pooling order upon the viability of that order. These parties read *Southern Union* overbroadly. In *Southern Union* the parties had requested a determination of whether the completion of the unit well as a dry hole and the subsequent abandonment by the unit operator had terminated the effectiveness of the pooling order under which operations had been conducted. The Commission entered an order in which it found the prior pooling order had terminated. However, the Commission went further and attempted to state in this order that the parties were "now in the same position they would be if such order had not been entered." We found that this amounted to an attempt to determine the legal effect of the termination of the prior pooling order upon the parties' legal title. An attempt, in effect, to render a judgment quieting title. This was condemned as being beyond the Commission's limited authority. *Southern Union* may not be read to preclude the Commission's power to determine that a prior order has ceased to be of force and effect.

■ In the case of *Cabot Carbon Co. v. Phillips Petroleum Co.,*[10] we specifically recognized the power of the Commission to clarify its previous orders under the authority of 52 O.S. 1951 § 112.[11] In making this ruling we distinguished between the power granted to clarify, or "supplement," previous orders, the exercise of which does not effect a change in the prior order or in the rights accrued under that order, and the powers granted to repeal, amend or modify a previous order. The power to effect a *change* in a previous order, we have held,[12] requires a showing before the Commission of a change in conditions or knowledge of conditions necessitating the repeal, amendment or modification. Failure to make such a showing renders an attempt to modify a prior order subject to the prohibition on collateral attacks set forth by the Legislature in 52 O.S. 1981 § 111.[13]

■ In the present case, the question sought to be adjudicated is in the nature of a clarification of the Commission's language in Order No. 165975 relating to the authorization "to drill and operate a well" on the unit consisting of Section 14. It is apparent that Ports of Call has interpreted this to mean a completed well into the target formations, and that it necessarily contemplates continuous operations to achieve that end, including the commencement of a second and third borehole following the blowout problems which had been encountered. Those opposing Ports of Call's continued operations construe "a well" to be limited to the initial borehole. The parties here are clearly entitled to have the issue clarified by the Commission.[14] It necessarily follows, from this opinion's previous discussion relating to the proper reading to be given to the *Southern Union* case, that the Commission as well has the authority to determine whether Order No. 165975 has ceased, by its own terms, to be of force and effect.

■ The authority of the Commission to enter an order clarifying a previous order is continuing in nature, flowing from

9.  465 P.2d 454 (Okla.1970).

10.  287 P.2d 675, 679 (Okla.1955).

11.  The current codification of this provision, 52 O.S. 1981 § 112, is identical to the 1951 codification. This provision states, in pertinent part:
      Any person affected by any Legislative or administrative order of the Commission shall have the right at any time to apply to the Commission to repeal, amend, modify, or supplement the same. . . .

12.  *Carter Oil Co. v. State,* 205 Okl. 374, 238 P.2d 300 (1951).

13.  *Union Texas Petroleum v. Corp. Comm.,* 651 P.2d 652, 659 (Okla.1981), cert. den. 459 U.S. 837, 103 S.Ct. 82, 74 L.Ed.2d 78.

14.  This result is also clearly indicated by the Legislature's prohibition embodied in 12 O.S. 1981 § 1657, precluding the district courts from proceeding under the Uniform Declaratory Judgments Act as to Commission orders.

the entry of that prior order.[15] While only the district court has the power to adjudicate the legal effect of Order No. 165975 on the private interests involved,[16] the Commission has continuing jurisdiction to resolve the precise question sought here to be presented. Thus, we find that the district court properly refused to attempt to exercise jurisdiction in this matter.

■ While recognizing the Commission's authority to supplement its own orders, this opinion may not be read as in any way derogating the right of mineral interest owners to enter into voluntary agreements under the auspices of 52 O.S.Supp. 1984 § 87.1. Nor should it be read in any way to conflict with our recognition of the exclusive power of the district courts to adjudicate private interest disputes arising under such agreements.[17]

However, where the parties, such as here, are conducting operations under a Commission imposed pooling order, and the question sought to be litigated arises from the construction of that pooling order, the proper forum to decide the question of construction is the Corporation Commission. Such a determination may then be appealed directly to this Court.[18]

■ In view of the evident conflict in jurisdiction between these forums under our general supervisory authority, we assume original jurisdiction of this matter and issue the requested writ of mandamus to the Oklahoma Corporation Commission directing it to proceed in the adjudication [19] of whether Ports of Call's operations in the development of Section 14 were within the scope of Order No. 165975. The writ of prohibition requested by petitioner Taft Milford is denied. The order of the trial court sustaining Ports of Call's special demurrer is affirmed. The temporary stay previously entered is dissolved.

SIMMS, C.J., DOOLIN, V.C.J., and HARGRAVE, WILSON and KAUGER, JJ., concur.

HODGES, OPALA and SUMMERS, JJ., concur in judgment.

OPALA, Justice, with whom HODGES and SUMMERS, JJ., join concurring in the judgment.

The essence of today's opinion is that, when an assessment is to be made of a drilling activity's conformity to the terms of a pooling order, the issue pressed for resolution lies within the Corporation Commission's [Commission or agency] exclusive cognizance to *"clarify"* its prior orders and to *"determine"* their continuing efficacy. Because I find today's pronouncement needlessly narrow and hence likely, once again, to eclipse the not-so-bright line of demarcation that must separate genuinely litigable district-court issues from agency jurisdiction, I can concur *only* in the judgment.

I

**THE DISPUTE**

Successive blowouts and mechanical problems required the operator to abandon the first two boreholes drilled at the well site. The third borehole was started *after* the date designated in the pooling order for the commencement of a well. While the operator took the position that its blowout-delayed drilling activity was being pursued in substantial conformity to the Commission-prescribed terms of the order, the owner [Nilsen] of a pooled leasehold urged in a district court "suit to quiet title" that the

---

15. We have previously pointed out, and here reemphasize, that the nature of the Commission's jurisdiction in entering orders, such as are involved here, flows from our statutes concerning oil and gas conservation. 52 O.S. 1981 § 81, et seq. Under these statutory provisions the Commission's jurisdiction is limited to the protection of *public* rights in the development and production of oil and gas. *Samson Resources Co. v. Corp. Comm.,* 702 P.2d 19, 21 (Okla.1985); *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 687 P.2d 1049, 1052 (Okla.1984).

16. *Southern Union Production Co. v. Corp. Comm.,* supra, note 9.

17. See *Samson Resources Co. v. Corp. Comm.,* supra, note 15; *Tenneco Oil Co. v. El Paso Natural Gas Co.,* supra, note 15.

18. 52 O.S. 1981 § 112.

19. *State ex rel. H.F. Wilcox Oil & Gas Co. v. Walker,* 168 Okl. 543, 35 P.2d 269 (1934).

pooling order had expired by its own terms the moment the original [first] borehole was plugged. The dispositive issue here is, then, whether the assessment to be made of an operator's drilling activity for its conformity to the agency order—an appraisal whose outcome will yield an answer to whether the pooling order in question did become *functus officio* or remained efficacious—lies within the cognizance of the Commission or of the district court.

## II

## THE ESSENCE OF THIS CONTROVERSY PRESENTS AN AGENCY ISSUE

Whenever the parties' conduct is to be assayed in terms of compliance with, or conformity to, the Commission-fashioned provisions of an *outstanding regulatory order*, the interests tendered for adversarial testing are those whose origin lie in the state's exercise of its police power exerting itself through the medium of a pooling order.[1] This inquiry calls for a declaration of *rights created by the regulatory order* rather than of interests derived from some private-law source. Because the district court is powerless either to *construe* or to *review*[2] these decisions of the Commission, the Commission itself affords the *only* available tribunal for resolution of *all* those disputed claims in which the *extent* or viability of rights derived from the provisions of a pooling order must be measured by the yardstick of conformity to the Commission-prescribed terms.[3]

## III

## LEASEHOLD OWNER'S [NILSEN'S] SUIT TO QUIET TITLE IS A TRANSPARENT VERBAL CAMOUFLAGE FOR AN ACTION TO DECLARE, BY DISTRICT COURT JUDGMENT, THAT OPERATOR'S RIGHTS IN THE POOLING ORDER HAVE TERMINATED

This so-called suit to quiet title, as the trial judge readily saw, was in essence a

1. *Anderson v. Corporation Commission*, Okl., 327 P.2d 699, 703 [1958], *app. dis.*, 358 U.S. 642, 79 S.Ct. 536, 3 L.Ed.2d 567 [1959].

2. The declaratory ruling sought by Nilsen was within the direct prohibition of our constitutional and statutory law. Its explicit norms are contained in the following provisions:

(a) The district court is explicitly prohibited by statute from entertaining suits for declaration of rights acquired under an order of the Corporation Commission. The terms of 12 O.S. 1981 § 1657 provide: "This act [Uniform Declaratory Judgments Act] *shall not be applicable to orders,* judgments, or decrees made by the State Industrial Court, the *Corporation Commission,* or any other administrative agency, board or commission of the State of Oklahoma." [Emphasis added.]

(b) Our fundamental law, Art. 9 § 20, Okl. Const., denies, with equal clarity, to *all* courts, except the Supreme Court, the power to review Commission orders. Section 20 provides in pertinent part: "* * * No court of this State, except the Supreme Court, shall have jurisdiction to review, affirm, reverse, or remand any action of the Corporation Commission ... or to suspend or delay the execution or operation thereof, or to enjoin, reverse, or interfere with the Corporation Commission in the performance of its official duties; ...."

(c) Commission orders made pursuant to the oil-and-gas conservation statutes may be reviewed *only* in the Supreme Court. See 52 O.S. 1981 §§ 111 and 113. Section 111 provides in pertinent part: "* * * No court of this state except the Supreme Court, and it only on appeal, as herein provided, shall have jurisdiction to review, reverse, annul, modify or correct any order, rule or regulation of the Commission within the general scope of its authority...." Section 113 provides in pertinent part: "* * * No order, rule, regulation, judgment or decree or final action of the Commission appealed from shall be superseded except by order of the Commission or the Supreme Court. * * *"

3. *Woods Petroleum Corporation v. Sledge,* Okl., 632 P.2d 393, 394 [1981].

Post-order activities calling for an assessment of conformity of the operator's conduct to the agency order lie clearly within the Commission's cognizance. See (a) *cases dealing with post-order controversies over conformity of drilling activities: Chancellor v. Tenneco Oil Co.,* Okl., 653 P.2d 204 [1982]; *Crest Resources v. Corporation Commission,* Okl., 617 P.2d 215 [1980]; *Stipe v. Theus,* Okl., 603 P.2d 347 [1979]; *Shell Oil Company v. Keen,* Okl., 355 P.2d 997 [1960] and *Cabot Carbon Company v. Phillips Petroleum Company,* Okl., 287 P.2d 675 [1955] and (b) *cases addressing election-related post-order activities: Amarex, Inc. v. Baker,* Okl., 655 P.2d 1040 [1983]; *Woods Petroleum Corporation v. Sledge, supra; Buttram Energies, Inc. v. Corporation Commission, Etc.,* Okl., 629 P.2d 1252 [1981] and *Gose v. Corporation Commission,* Okl., 460 P.2d 118 [1969].

statutorily-interdicted declaratory judgment action whose very institution and maintenance offend the terms of 12 O.S. 1981 § 1657.[4] Nilsen clearly sought a judicial determination that the operator had lost its right to drill as a result of its failure to commence a well on or before the date designated in the pooling order. While a district court is authorized by law to remove a cloud created by a facially void agency order,[5] it is absolutely powerless to declare rights arising under a facially efficacious regulatory order of the Commission.[6] Moreover, no operator's status may ever be conferred on a person or be transferred to another except by the Commission's expressed sanction.[7]

Cases indicating that a district court may take cognizance of claims tendering issues regulatory in character whenever those issues can be decided *without disturbing any* Commission orders—see e.g. *Southern Union Production Company v. Corporation Commission* [8]—fail to take into account the plain interdiction in 12 O.S. 1981 § 1657.[9] *Until its rather tardy appearance in the court's opinion herein, the § 1657 interdiction went entirely unnoticed and unheeded by this court's past jurisprudence.*[10] The provisions of both our constitutional and statutory law expressly prohibit the district court from declaring rights in Commission orders.[11] While today's opinion does curb the overbroad language of *Southern Union,*[12] it will not brighten the fuzzy jurisdictional line by crisply separating *genuine court issues* from the agency's *exclusive regulatory cognizance.*

The gravamen of every forensic dispute is to be drawn from its true essence rather than from the pleader's circumlocution. A plaintiff's attempt to dress up a controversy in the verbal garb of an equity suit to quiet title should not succeed if the issues pressed for resolution address the terms, construction, and effect of an agency order.[13] An agency controversy will not be transmuted into a chancery contest by a clever draftsman's adroit shifting of labels.[14] This court *must not* countenance

---

4. See footnote 2(a) *supra.*

5. Our jurisprudence limits district-court power over Commission orders to ascertaining whether the order is facially valid or void. *Gulfstream Petroleum Corporation v. Layden,* Okl., 632 P.2d 376 [1981] and *Chancellor v. Tenneco Oil Co., supra* note 3 at 207. See also, *McDaniel v. Moyer,* Okl., 662 P.2d 309, 312–313 [1983]. When a pooling order is facially void for want of notice, a district court may declare it ineffective (*Gulfstream Petroleum Corporation v. Layden, supra,* and *Chancellor v. Tenneco Oil Co., supra* at note 3), but if the working interest owner, deprived of participation option by want of notice, seeks an opportunity to elect, the Commission appears to constitute the *sole tribunal* with power to grant relief. See *Cravens v. Corporation Commission,* Okl., 613 P.2d 442, 444 [1980] and *Gose v. Corporation Commission, supra* note 3.

6. See footnote 2(a) *supra.*

7. *Crest Resources v. Corporation Commission, supra* note 3 at 217.

8. Okl., 465 P.2d 454 [1970]. For an analysis and discussion of the jurisdictional confusion in the aftermath of *Southern Union, supra,* see Hart, Interpreting Corporation Commission Orders— Should the Commission be a Spectator or a Player?, 48 OBJ 1343 [1977].

9. See footnote 2(a) *supra.*

10. See footnote 8 *supra.*

11. See footnote 2 *supra.*

12. See footnote 8 *supra.*

13. See *Tenneco Oil Company v. El Paso Natural Gas Company,* Okl., 687 P.2d 1049, 1056 [1984] (Opala. J., dissenting) and *Samson Resources Co. v. Corporation Com'n.,* Okl., 702 P.2d 19, 24 [1985] (Opala, J., dissenting).

14. In the process of drawing the sought-after bright line of jurisdictional demarcation, this court's inquiry should endeavor to separate agency issues of public-law content from controversies with a purely proprietary, private-law dimensional sweep. The line of demarcation to be drawn for separation of issues within the district court's cognizance from those which fall within the Corporation Commission's [Commission's] jurisdiction lies along that often-difficult-to-chart boundary location where the *statutory limit* of the Commission's *regulatory power* over the oil-and-gas industry meets with the periphery of the law's still-preserved *freedom to govern one's actions by contract alone.* See *Tenneco Oil Co. v. El Paso Natural Gas,* (Opala, J., dissenting), *supra* note 13 at 1060.

the energy bar's quest for circumvention of the Commission's statutory cognizance by permitting camouflaged declaratory-judgment or disguised quiet-title suits to go forward in violation of § 1657.[15]

I would hence hold that, because this controversy calls for a declaration of rights in a pooling order—a regulatory, public-law police power device—and the disputed claim requires an assessment of the operator's drilling activities in terms of their conformity to the pooling order, the Commission has *exclusive* cognizance of the issues tendered in this so-called quiet title action.